2004-NMCA-003

84 P.3d 685

**Maria Elena BRENNEMAN, Individually, Mark Brenneman, Individually, and on Behalf of Paul L. Brenneman and Leah M. Brenneman, Minor Children, Plaintiffs–Appellants,**

v.

**The BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, as Trustees of the University of New Mexico Health Sciences Center, Defendant–Appellee.**

**No. 23,778.**

Court of Appeals of New Mexico.

Nov. 17, 2003.

Certiorari Denied, No. 28,407, Dec. 23, 2003.

Philip C. Gaddy, David J. Jaramillo, Gaddy Law Firm, Albuquerque, NM, for Appellants.

Kenneth C. Downes, Rick Sandoval, Kenneth C. Downes & Associates, P.C., Albuquerque, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} This case presents the question of whether loss of consortium damages are recoverable under Sections 41–4–9 and –10 of New Mexico's Tort Claims Act. *See* NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2003) (hereinafter "the Act"). We hold that loss of consortium damages are permissible under the Act's provisions for damages resulting from bodily injury. We therefore reverse the trial court's dismissal of the loss of consortium claims.

## FACTS AND PROCEEDINGS

{2} According to the complaint filed in this case, Maria Brenneman visited the University of New Mexico Health Sciences Center (UNMHSC) Faculty Clinic on December 20, 2000, for treatment of a yeast infection and perineal rash. Ms. Brenneman's urinalysis, ordered on that day, revealed the presence of Strotococcus pygenes, a Group A Strep infection. However, UNMHSC did not inform Ms. Brenneman of the presence of that virus, and she did not receive treatment for it. The condition worsened, and a week later Ms. Brenneman was admitted to the hospital for septic shock and renal failure. Eventually the condition required the amputation of her right leg above the knee.

{3} On May 29, 2002, Ms. Brenneman and her husband, Mark Brenneman, (Plaintiffs) filed a complaint against the Board of Regents of the University of New Mexico as the Trustees of UNMHSC (Defendant), alleging negligence in the treatment of Ms. Brenneman. Plaintiffs sought damages for personal injury and loss of spousal consortium, as well as loss of consortium on behalf of their two minor children. Defendant's answer stated that any claim against Defendant is subject to the Tort Claims Act and that recovery for loss of consortium is barred by the Act. Defendant subsequently filed a motion to dismiss the loss of consortium claims. After a hearing, the district court granted Defendant's motion to dismiss and certified the order for interlocutory appeal. In addition to statutory grounds, Plaintiffs noted discrepancies among district court decisions on the issue when they petitioned this Court for an interlocutory appeal. We granted the petition.

## DISCUSSION

{4} The issue presented requires us to interpret the Act. We review issues of statutory construction de novo. *Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. The plain language of a statute is the primary indicator of legislative intent. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. Because we undertake this analysis in the context of Defendant's motion to dismiss, we assume the truth of the facts alleged in the complaint. *Gutierrez v. W. Las Vegas Sch. Dist.*, 2002–NMCA–068, ¶ 7, 132 N.M. 372, 48 P.3d 761.

{5} The Legislature enacted the Act in response to the New Mexico Supreme Court's decision to abolish state sovereign immunity in *Hicks v. State*, 88 N.M. 588, 592, 544 P.2d 1153, 1157 (1975). The Act reestablished sovereign immunity, but created eight exceptions, or circumstances under which the state would waive its sovereign immunity and allow suit. The Legislature declared it "to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act … and in accordance with the principles established in that act." Section 41–4–2(A).

{6} The Act waives sovereign immunity for "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital" and "while acting within the scope of their duties of providing health care services." Sections 41–4–9 and –10. The Act does not define any portion of the phrase "damages resulting from bodily injury." Section 41–4–3. To

examine whether loss of consortium damages are available under this plain language, we must determine whether loss of consortium is a type of damage "resulting from bodily injury."

■ {7} Loss of consortium was defined in an early case as "the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another." *Romero v. Byers*, 117 N.M. 422, 425, 872 P.2d 840, 843 (1994). The jury instructions use a phrase similar to "resulting from bodily injury" in defining loss of consortium:

> The emotional distress of _____ (plaintiff) due to the loss [of the society], [guidance], [companionship] and [sexual relations] *resulting from the injury to* _____ (name of injured or deceased spouse or child of plaintiff).

UJI 13–1810A NMRA 2003 (emphasis added).

{8} Our Supreme Court has held that language in an insurance policy very similar to the language of the Act did include loss of consortium damages. In *Gonzales v. Allstate Insurance Co.*, 122 N.M. 137, 138–39, 921 P.2d 944, 945–46 (1996), the Court examined whether the plaintiff could bring a claim for loss of consortium separately from the claim for her husband's wrongful death under the terms of their insurance policy. Although that case involved interpretation of an insurance policy contract, its analysis is relevant here. *See Folz v. State*, 110 N.M. 457, 461, 797 P.2d 246, 250 (1990) (explaining that cases that define the term "single occurrence" in the context of an insurance contract are relevant to interpretations of that same term in the Act). The *Gonzales* Court held:

> [U]nder the language of this specific policy, the claim for loss of consortium is subsumed under the compensation for the "bodily injury" suffered by Gonzales's husband because it is encompassed by the phrase, "damages sustained by anyone else *as a result of that bodily injury*."

*Gonzales*, 122 N.M. at 138, 921 P.2d at 945 (emphasis added).

{9} The notion that loss of consortium damages result from bodily injury also fits with our characterization of loss of consortium as a derivative claim. ، *See Archer v. Roadrunner Trucking, Inc.*, 1997–NMSC–003, ¶¶ 11–12, 122 N.M. 703, 930 P.2d 1155 (holding that "[w]here the defendant is not liable to the injured person for physical injuries there can be no derivative claim for [loss of consortium] damages by the injured person's spouse"); *accord Turpie v. Southwest Cardiology Assocs., P.A.*, 1998–NMCA–042, ¶ 7, 124 N.M. 787, 955 P.2d 716. A "derivative action" is defined as "a [claim] arising from an injury to another person." *Black's Law Dictionary* 455 (7th ed.1999). The plain meanings of "resulting from" and "arising from" are identical. *See The New Shorter Oxford English Dictionary* 2570 (4th ed.1993) (defining "result" as "arise as an effect, issue, or outcome from some action, process, or design"). Therefore, it is reasonable to construe the derivative claim of loss of consortium as a claim "resulting from bodily injury."

{10} Even if the phrase "resulting from bodily injury" leaves some ambiguity regarding its inclusion of loss of consortium damages, we reach the same result through construction and interpretation of the Act as a whole. *See Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980). The section of the Act pertaining to legislative findings and the Act's purpose states, "Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Section 41–4–2(B). "The entire basis of the Act is premised on traditional concepts of negligence...." *Methola*, 95 N.M. at 332, 622 P.2d at 237.

■ {11} The traditional tort concept at issue here is the foreseeability of the plaintiffs seeking to recover loss of consortium damages, specifically, Ms. Brenneman's spouse and minor children. In analyzing the foreseeability of Plaintiffs under the Act, we use the test from *Solon v. WEK Drilling Co.*, 113 N.M. 566, 569, 829 P.2d 645, 648 (1992):

In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person.

. . . .

Duty and foreseeability have been closely integrated concepts in tort law since the court in [*Palsgraf*, [248 N.Y. 339, 162 N.E. 99 (1928)] ] stated the issue of foreseeability in terms of duty. If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant.

*Lucero v. Salazar,* 117 N.M. 803, 805, 877 P.2d 1106, 1108 (Ct.App.1994) (emphasis omitted) (internal quotation marks and citation omitted) (finding that the *Solon* analysis is the appropriate method for using traditional tort principles to determine permissible plaintiffs under the Act).

{12} The question of whether Plaintiffs claiming loss of consortium are foreseeable under *Solon* has already been answered affirmatively by the body of cases recognizing and expanding the loss of consortium claim in New Mexico. The *Solon* test was central in determining that spousal loss of consortium plaintiffs are foreseeable. *See Romero,* 117 N.M. at 425–26, 872 P.2d at 843–44. Subsequently, the Court used the *Solon* analysis to determine that grandparental caretakers of minor children and unmarried cohabitants seeking loss of consortium were also foreseeable. *See Fernandez v. Walgreen Hastings Co.,* 1998–NMSC–039, ¶ 30, 126 N.M. 263, 968 P.2d 774; *Lozoya v. Sanchez,* 2003–NMSC–009, ¶¶ 15–17, 133 N.M. 579, 66 P.3d 948.

{13} Defendant correctly summarizes our Tort Claims Act precedents to say that courts are hesitant to expand the obligations of public employees and seek a "specific waiver of immunity" before allowing suit. *Pemberton v. Cordova,* 105 N.M. 476, 478, 734 P.2d 254, 256 (Ct.App.1987) (holding that a school is not liable for the acts of third parties on school grounds), *limited on other grounds by Callaway v. N.M. Dep't of Corrections,* 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct.App.1994). However, the specific waiver of immunity in this case already exists pursuant to Sections 41–4–9 and –10, making the hospital liable for any negligence by its employees who had a duty to employ reasonable care in providing health care services and operating the facility. Allowing Plaintiffs to recover loss of consortium damages will not impose any new duty on Defendant because "this cause of action imposes no new obligation of conduct." *Romero,* 117 N.M. at 426, 872 P.2d at 844 (internal quotation marks and citation omitted).

{14} Defendant relies on the language and holding of our 1994 case of *Lucero,* 117 N.M. at 806, 877 P.2d at 1109, to argue that a loss of consortium claim is impermissible under the Act. *Lucero* held that the adult children of a man shot by police officers could not recover damages under the theory that the police violated their constitutional right to associate with and enjoy the guidance of their father. *Id.* at 804, 877 P.2d at 1107. Defendant's reliance on *Lucero* is misplaced for three reasons. First, *Lucero* interpreted Section 41–4–12 of the Act, which is quite distinct from the rest of the Act. Section 41–4–12 contains a list of the causes of action for which police officers' sovereign immunity is waived and limits recovery to enumerated, statutory and constitutional causes of action. *See* Section 41–4–12. Section 41–4–12 does not waive immunity for cases premised on simple negligence. *Blea v. City of Espanola,* 117 N.M. 217, 220, 870 P.2d 755, 758 (Ct.App. 1994). In contrast, Sections 41–4–9 and –10 provide broadly for recovery of "damages . . . caused by the negligence of public employees." The plain language of these sections reveals that limitations on recoverable damages under Section 41–4–12 are inapplicable to cases under Sections 41–4–9 and –10.

{15} Second, *Lucero* did not bar loss of consortium claims under the Act. The plaintiffs in *Lucero* argued that they had constitutional claims in their own right, not that they were entitled to loss of consortium damages as part of derivate claims.

{16} Third, *Lucero* was decided less than two months after *Romero* recognized the loss of consortium claim in New Mexico, and we did not take note of *Romero*. Therefore, we find that the availability of loss of consortium damages under the Act was not considered as an issue in *Lucero,* and, consequently,

*Lucero* cannot be cited to bar a loss of consortium claim. *See Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003–NMSC–011, ¶¶ 3–6, 133 N.M. 661, 68 P.3d 901 (limiting the rule that "cases do not stand for propositions not considered" to cases in which an issue as a whole was not considered). We did "construe the language of Section 41–4–2(A) as evincing a legislative intent not to waive immunity for injuries to indirect or incidental victims of tortious acts committed by government employees." *Lucero*, 117 N.M. at 806, 877 P.2d at 1109. However, when viewed in light of the body of law establishing loss of consortium, which began at about the time *Lucero* was decided and has since greatly expanded, and the fact that *Lucero* did not directly address the issue, this language cannot be found to bar our decision in the present case.

{17} Defendant also asserts that the Act should be strictly construed because it is in derogation of the common law. This argument is not helpful to our analysis. First, it is difficult to say what parts of the Act are in derogation of the common law. At the time of its enactment, the "common law" of New Mexico abrogated state sovereign immunity and allowed all claims against state government. *See Hicks*, 88 N.M. at 592, 544 P.2d at 1157. Insofar as it re-established sovereign immunity, the Act was in derogation of the common law. But in its exceptions, the Act restored the common law right to sue in those specific situations. And while some of our cases have called for strict construction of some provisions of the Act, other cases have espoused broad interpretations of other provisions. *Compare Methola*, 95 N.M. at 333, 622 P.2d at 238 (calling for strict construction of the term "caused by" in Section 41–4–12), *with Bober v. N.M. State Fair*, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991) (rejecting narrow view of Section 41–4–6), *and Williams v. Cent. Consol. Sch. Dist.*, 1998–NMCA–006, ¶ 10, 124 N.M. 488, 952 P.2d 978 (calling for broad construction of Section 41–4–6).

{18} Because of the unique relationship between the Act and the common law, we find the more useful canon of construction to be that "[i]n interpreting the meaning of a statute, our primary purpose is to give effect to the Legislature's intent." *Rutherford v. Chaves County*, 2003–NMSC–010, ¶ 11, 133 N.M. 756, 69 P.3d 1199.

{19} In enacting the Tort Claims Act, the Legislature intended to balance competing considerations:

> The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

Section 41–4–2(A). The Legislature achieved this balance by waiving sovereign immunity with respect to specific people and places which, in the performance of certain governmental functions, give rise to traditional duties to the public. Once a duty is established, loss of consortium damages flow from the principles of tort liability. As loss of consortium is a damage resulting from bodily injury and our courts have repeatedly held that loss of consortium plaintiffs are foreseeable, we believe that loss of consortium is exactly the type of damage "based upon the traditional tort concepts of duty" that the Legislature intended to include under the applicable waivers of sovereign immunity in the Act.

{20} In the present case, UNMHSC does not contest that it acted in the scope of the Act's exceptions when it treated Ms. Brenneman and owed her a duty of reasonable care. It was foreseeable that Ms. Brenneman's spouse and minor children would suffer loss of consortium as a result of any bodily injury that Defendant's negligence caused Ms. Brenneman. The plain language of the Act, our cases interpreting it, and its legislative history all indicate that loss of consortium damages should be recoverable under Sections 41–4–9 and –10. The trial court erred in granting Defendant's motion to dismiss the loss of consortium claims.

## CONCLUSION

{21} We reverse the grant of Defendant's motion to dismiss the loss of consortium claims.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, and MICHAEL E. VIGIL, Judges.