**Certiorari Denied, November 13, 2013, No. 34,359**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2014-NMCA-010**

**Filing Date:  September 17, 2013**

**Docket No. 32,191**

**STATE OF NEW MEXICO ex rel.
GREG COLLIER,**

 **Petitioner-Appellant,**

**v.**

**NEW MEXICO LIVESTOCK BOARD,
NEW MEXICO LIVESTOCK BOARD
COMMISSIONERS/ADMINISTRATIVE
JUDICIAL OFFICERS IN THEIR
INDIVIDUAL CAPACITIES,**

 **Respondents-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge**

Domenici Law Firm, P.C.
Pete V. Domenici, Jr., Esq.
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Andrea R. Buzzard, Assistant Attorney General
Santa Fe, NM

for Appellees

**OPINION**

**WECHSLER, Judge.**

1

**{1}**     Petitioner Greg Collier appeals the district court's order granting Respondents' motion to dismiss his petition for mandamus, alternative writ of mandamus, and complaint for declaratory relief (the petition).  In the petition, Collier sought to compel the New Mexico Livestock Board to hold a hearing pursuant to NMSA 1978, Section 30-18-1(J) (2007).  This statute requires the Livestock Board to hold a hearing when a "dispute" arises regarding whether a criminal defendant charged with any offense involving cruelty to an animal also fits within one of the separate statutory exceptions to animal cruelty contained in Section 30-18-1(I), and in particular Section 30-18-1(I)(4) that exempts "commonly accepted agricultural animal husbandry practices."  The district court dismissed the petition in this case and determined that it was not ripe for adjudication because a separate district court judge handling the criminal proceedings (the criminal court) had dismissed the remaining animal cruelty charge against Collier.  Our Supreme Court has since reversed the criminal court's dismissal of the animal cruelty charge and remanded Collier's criminal case for a trial.  *See State v. Collier*, 2013-NMSC-015, 301 P.3d 370.  We hold that, under Section 30-18-1, the district court in a criminal case is the proper forum to determine whether a dispute exists regarding whether a defendant's conduct is a commonly accepted agricultural animal husbandry practice pursuant to Section 30-18-1(I)(4), and, if so, the court in the criminal proceedings must order the Livestock Board to hold a Section 30-18-1(J) hearing.  As a result, because Collier has not filed a motion in the criminal court to address Section 30-18-1(I)(4) and the need for the Livestock Board to hold a Section 30-18-1(J) hearing, Collier's petition did not state a proper claim for mandamus or declaratory relief.  Accordingly, we affirm.

**BACKGROUND**

**{2}**     In 2006, Collier was arrested and charged with a single felony count of  extreme animal cruelty pursuant to Section 30-18-1(E), which provides that extreme cruelty to an animal consists of   "(1) intentionally or maliciously torturing, mutilating, injuring or poisoning an animal; or (2) maliciously killing an animal."  The charges arose from the death of a colt named Cowboy as a result of Collier's use of a number of questionable training techniques involving the application of force and alleged intentional abuse.  The allegations against Collier included assertions that he repeatedly collided Cowboy into a water trough, caused Cowboy to flee while tied and then be jerked backward, struck Cowboy in the head and body, and caused Cowboy to jump up and fall to the ground with extreme force.  Of particular relevance to this case, the State also asserted that Collier engaged in a training technique that he called "hobbling," which Collier used to trim Cowboy's hooves. Hobbling, as commonly understood, is a technique used to control a horse or to prevent it from straying by tying or fastening its legs together.  *Webster's Third New Int'l Dict.* at 1075 (1986).

**{3}**     The animal cruelty statute contains exceptions to the provisions criminalizing cruelty to animals.  Under Section 30-18-1(I)(4), the provision criminalizing cruelty to animals does not apply to "the treatment of livestock and other animals used on farms and ranches for the production of food, fiber or other agricultural products, when the treatment is in accordance with commonly accepted agricultural animal husbandry practices[.]"  In order to determine

if conduct is a commonly accepted agricultural animal husbandry practice, Section 30-18-1(J) provides that "[i]f there is a dispute as to what constitutes commonly accepted agricultural animal husbandry practices . . . , the [Livestock Board] shall hold a hearing to determine if the practice in question is a commonly accepted agricultural animal husbandry practice." Prior to his criminal trial, Collier requested a hearing before the Livestock Board to determine whether "hobbling" is a commonly accepted agricultural animal husbandry practice. The record is unclear as to the manner in which Collier made the request for a hearing, although in this case, Collier concedes that he never filed a formal motion with the criminal court. The criminal court denied the request for a hearing. Collier did not seek any emergency or extraordinary relief from this ruling. Collier's first trial ended in a mistrial after the jury hung on the extreme animal cruelty count.

**{4}** The State prosecuted Collier for a second time and, at the close of evidence, added a misdemeanor count for animal cruelty to the indictment. The misdemeanor count was based on the same conduct, but for a conviction only requires that the jury determine that the defendant is guilty of "(1) negligently mistreating, injuring, killing without lawful justification or tormenting an animal; or (2) abandoning or failing to provide necessary sustenance to an animal under that person's custody or control." Section 30-18-1(B). Following the second trial, the jury returned a verdict acquitting Collier of the extreme cruelty felony count, but it could not reach a decision on the misdemeanor animal cruelty count.

**{5}** The State attempted to prosecute Collier a third time on the misdemeanor animal cruelty count, but the criminal court dismissed the charge on the basis that the two-year statute of limitations had run. This Court affirmed the criminal court's dismissal on double jeopardy grounds.

**{6}** Our Supreme Court granted certiorari. The next day, Collier attempted to obtain a Section 30-18-1(J) hearing from the Livestock Board, but the Livestock Board director notified Collier that it could provide him a hearing only upon court order from the criminal court. The director wrote Collier:

> The . . . Livestock Board has statutory authority to hold a hearing on a dispute over what might be considered normally accepted agricultural practice. There needs to be an actual dispute, not just a request for an opinion. In your case, I believe we would need to have a court order identifying and describing exactly what the particulars of the dispute are. We will be glad to respond on those terms.

**{7}** While the State's appeal in Collier's criminal case was pending, Collier filed this civil action in the district court against the Livestock Board and the Livestock Board's members in their individual capacities. Collier sought mandamus, asking the district court to order the Livestock Board to hold a Section 30-18-1(J) hearing or, in the alternative, for a declaratory judgment and injunction, to state the Livestock Board's obligations under

3

Section 30-18-1(J).

**{8}** In his petition for mandamus and complaint for declaratory relief, Collier asserted that he demanded the Livestock Board to hold a Section 30-18-1(J) hearing to determine whether the conduct forming the basis of his criminal charge was a commonly accepted agricultural animal husbandry practice and thus exempted under Section 30-18-1(I)(4) and that the Livestock Board has a mandatory non-discretionary duty to hold hearings under Section 30-18-1(J). In Collier's view, the Livestock Board impermissibly limited its duty to hold Section 30-18-1(J) hearings to situations in which a criminal court orders the Livestock Board to conduct such a hearing.

**{9}** The Livestock Board filed a motion to dismiss the petition, arguing that (1) Collier's petition was not ripe, (2) there was no actual controversy under the New Mexico Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 to -15 (1975), (3) Collier lacked standing, and (4) the complaint failed to state a claim against the Livestock Board or its members in their individual capacities. The Livestock Board argued that there was no "dispute" for the Livestock Board to resolve because the criminal court dismissed Collier's animal cruelty charge, and, therefore, there was no "actual controversy" that was "ripe" for purposes of a mandamus action or under the Declaratory Judgment Act. The Livestock Board acknowledged that the State's appeal was pending before the Supreme Court, but it argued that this matter was not ripe unless the Supreme Court reversed the dismissal and reinstated the animal cruelty charge against Collier, because a decision by the Livestock Board can only have legal consequences when there are pending charges against a defendant. Additionally, according to the Livestock Board, only a district court in a pending criminal case has the authority to order a Section 30-18-1(J) hearing, and, in the event the Supreme Court reinstated the animal cruelty charge, Collier would be "free to make such requests of the [criminal court] as he thinks advisable and warranted under the law, including a request for a hearing under Section 30-18-1(J)."

**{10}** After holding a hearing on the merits, the district court dismissed Collier's petition. In its order, the district court determined that Collier did not file a formal motion for a Section 30-18-1(J) hearing in the criminal court and that if the Supreme Court overturned the dismissal of the animal cruelty charge, Collier may seek a Section 30-18-1(J) hearing within the context of the criminal case in the criminal court. The district court observed that, because Section 30-18-1 is a criminal statute, Section 30-18-1(J) is only applicable when there are "pending" criminal charges. Accordingly, the district court determined that the matter was not "ripe" and that no "actual controversy" existed because there was no current "dispute" for the Livestock Board to resolve. Collier filed a timely appeal. We first discuss the district court's conclusions regarding ripeness and standing and then proceed to the district court's conclusion that the criminal court is the appropriate forum for Collier to move for a Section 30-18-1(J) hearing.

**INITIAL MATTERS–RIPENESS AND STANDING**

4

**{11}** While this appeal was pending before this Court and after the parties briefed this case, our Supreme Court issued its opinion in Collier's criminal case. *See Collier*, 2013-NMSC-015. It reversed this Court's determination that a retrial for the misdemeanor animal cruelty count would violate Collier's double jeopardy rights. *Id.* ¶ 1. Additionally, the Supreme Court held that retrial is not barred by the two-year statute of limitations for misdemeanor offenses. *Id.* ¶ 2. The Supreme Court remanded the case to the criminal court for retrial on the animal cruelty count. *Id.* ¶ 42. We therefore proceed under the assumption that charges against Collier for a misdemeanor count of animal cruelty are pending before the criminal court and address his arguments in this context.

**{12}** Because our Supreme Court has overturned the criminal court's dismissal of Collier's charges, *id.*, the district court's determination that there are no charges "pending" has changed, and this basis for its conclusion that Collier's petition is not ripe is no longer applicable. "The basic purpose of ripeness law is and always has been to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems." *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 44, 149 N.M. 556, 252 P.3d 780 (internal quotation marks and citation omitted). "The ripeness doctrine exists to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 23, 134 N.M. 216, 75 P.3d 816 (internal quotation marks and citation omitted). "[A]n issue may be ripe where the threat of harm must be sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Id.* (internal quotation marks and citation omitted). Collier's petition is now ripe for review because he currently has a pending charge for animal cruelty in the criminal court.

**{13}** Additionally, the Livestock Board challenges Collier's standing, arguing that Collier has not suffered a direct injury because the criminal court dismissed the animal cruelty charge. *See ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 1, 144 N.M. 471, 188 P.3d 1222 (holding that a plaintiff must be "directly injured as a result of the action they seek to challenge" in order to have standing). However, due to our Supreme Court's reversal and the reinstatement of the animal cruelty charge, Collier has standing in this action to compel the Livestock Board to hold a Section 30-18-1(J) hearing because he potentially suffers the threat of injury by the deprivation of a hearing. *See id.* ¶ 11 (holding that a plaintiff must only show an "imminent[] threat[ of] injury" or "a real risk of future injury" to satisfy the direct injury prong of the law of standing (internal quotation marks and citation omitted)).

**{14}** Thus, the issue in this appeal is not ripeness or standing, but whether Collier's petition in this action has stated a claim for mandamus or declaratory relief under a proper construction of Section 30-18-1. Within the context of this larger argument, Collier contends that (1) the ordinary meaning of Section 30-1-18(I)(4) and Section 30-1-18(J) clearly and unambiguously requires the Livestock Board to provide him a hearing on the disputed application of his training techniques that are at issue in the criminal prosecution; (2) that

5

the district court in this case, not the criminal court, is an appropriate forum to compel the Livestock Board to hold a Section 30-1-18(J) hearing because the district court has the power to correct the Livestock Board's denial of Collier's demand for a hearing; and (3) he pleaded adequate facts to state a claim for mandamus and declaratory relief. Additionally, Collier argues that the district court erred in dismissing his claim against the Livestock Board's members in their individual capacities for failure to state a claim because his complaint named the members in their individual capacities and the well-pleaded facts allege that Livestock Board personnel, including director Myles Culbertson, acting unilaterally and ultra vires, denied his right to a Section 30-18-1(J) hearing.

## STANDARD OF REVIEW

**{15}** In reviewing a district court's grant of a motion to dismiss, we assume the truth of all facts alleged in the complaint. *See In re Convisser*, 2010-NMSC-037, ¶ 10, 148 N.M. 732, 242 P.3d 299. A motion to dismiss challenges the legal sufficiency of the complaint and tests whether the plaintiff might prevail under any set of facts provable under the claim. *Id.* When our review of a motion to dismiss requires statutory construction, our review is de novo. *See Brenneman v. Bd. of Regents of Univ. of N.M.*, 2004-NMCA-003, ¶ 4, 135 N.M. 68, 84 P.3d 685.

## MANDAMUS AND DECLARATORY RELIEF GENERALLY

**{16}** Collier's petition and complaint sought both mandamus relief and relief under the Declaratory Judgment Act. A court may issue a writ of mandamus to any board or person in order to compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station. NMSA 1978, § 44-2-4 (1884). In order for a district court to issue the writ, the "writ shall state concisely the facts showing the obligation of the defendant to perform the act, and his omission to perform it." NMSA 1978, § 44-2-6 (1884). A writ of mandamus is only available in limited circumstances and to achieve a limited purpose: it is available only to one who has a clear legal right to the performance sought. *See State ex rel. Coll v. Johnson*, 1999-NMSC-036, ¶ 12, 128 N.M. 154, 990 P.2d 1277. It "is a drastic remedy to be invoked only in extraordinary circumstances." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-023, ¶ 12, 124 N.M. 698, 954 P.2d 763.

**{17}** Collier's petition also seeks relief under the Declaratory Judgment Act. Section 44-6-2 states that "[i]n cases of actual controversy, district courts within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." A plaintiff may seek relief under the Declaratory Judgment Act in cases in which mandamus relief would otherwise lie. *State ex rel. Hanosh v. State ex rel. King,* 2009-NMSC-047, ¶ 11, 147 N.M. 87, 217 P.3d 100. Our inquiry becomes whether the Livestock Board had a mandatory, non-discretionary duty to provide Collier with a Section 30-18-1(J) hearing under the circumstances of this case thus making mandamus relief appropriate. We turn to Section 30-18-1(J).

**SECTION 30-18-1(J)**

**{18}** Collier argues that the district court erred in dismissing his petition because the statutory language of Section 30-18-1(J) clearly and unambiguously requires the Livestock Board to provide him a hearing on the disputed application of hobbling. In interpreting statutes, we seek to give effect to the intent of the Legislature. *See Schuster v. State Dep't. of Taxation & Revenue*, 2012-NMSC-025, ¶ 9, 283 P.3d 288. In construing Section 30-18-1(J), we seek to apply the plain meaning of the statute as written, unless it is ambiguous or the Legislature indicates a different intent. *Schuster*, 2012-NMSC-025, ¶ 9. We also construe all subsections of Section 30-18-1 as a harmonious whole and seek to give effect to each subsection. *See Holguin v. Fulco Oil Serv. LLC,* 2010-NMCA-091, ¶ 38, 149 N.M. 98, 245 P.3d 42 ("Where several sections of a statute are at issue, all sections must be read together so that all parts are given effect, including amendments.").

**{19}** Section 30-18-1(I) contains seven exceptions to the provisions criminalizing animal cruelty and extreme animal cruelty. It provides that the animal cruelty provisions do not apply to:

> (1) fishing, hunting, falconry, taking and trapping . . . ;
>
> (2) the practice of veterinary medicine . . . ;
>
> (3) rodent or pest control . . . ;
>
> (4) the treatment of livestock and other animals used on farms and ranches for the production of food, fiber or other agricultural products, when the treatment is in accordance with commonly accepted agricultural animal husbandry practices;
>
> (5) the use of commonly accepted Mexican and American rodeo practices, unless otherwise prohibited by law;
>
> (6) research facilities licensed pursuant to the provisions of 7 U.S.C. Section 2136, except when knowingly operating outside provisions, governing the treatment of animals, of a research or maintenance protocol approved by the institutional animal care and use committee of the facility; or
>
> (7) other similar activities not otherwise prohibited by law.

**{20}** Regarding the exception in Section 30-18-1(I)(4), Section 30-18-1(J) provides that "[i]f there is a dispute as to what constitutes commonly accepted agricultural animal husbandry practices . . . , the [Livestock Board] shall hold a hearing to determine if the practice in question is a commonly accepted agricultural animal husbandry practice." Collier's argument is that this provision clearly and unambiguously imposed upon the

Livestock Board a mandatory, non-discretionary duty to provide a Section 30-18-1(J) hearing upon his petition to the Livestock Board. To be sure, Section 30-18-1(J) does provide a criminal defendant a clear and unambiguous right to a hearing before the Livestock Board when a "dispute" arises as to whether the defendant's conduct leading to an animal cruelty charge arose out of a commonly accepted agricultural animal husbandry practice.

**{21}** However, the district court did not hold that Collier was not entitled to a hearing; it determined that the proper procedure for Collier to obtain a hearing was for Collier to file a motion in the criminal court to order the Livestock Board to conduct the hearing. Section 30-18-1 does not contain any provisions describing procedures to initiate a hearing and the Livestock Board has not adopted any administrative rules concerning procedures for Section 30-18-1(J) hearings. Because of this legislative and regulatory void, we consider the scope of Section 30-18-1(J) to be ambiguous as to the procedures for a Section 30-18-1(J) hearing. As a matter of first impression, this Court must now construe Section 30-18-1(J) in accordance with its purpose and in conjunction with the relevant provisions of Section 30-18-1. *See T-N-T Taxi, Ltd. v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-016, ¶ 5, 139 N.M. 550, 135 P.3d 814 ("[S]tatutes are given effect as written without room for construction unless the language is doubtful, ambiguous, or adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious purpose."); *Holguin*, 2010-NMCA-091, ¶ 38 ("Where several sections of a statute are at issue, all sections must be read together so that all parts are given effect, including amendments.").

**{22}** Looking at the statute in its entirety, Section 30-18-1 creates the crimes of cruelty to animals and extreme cruelty to animals. It is in the criminal code of the New Mexico statutes and sets out the definitions, exceptions, and penalties for the crimes. The purpose of a hearing under Section 30-18-1(J) is to allow the Livestock Board, with its expertise with farming and ranching practices, to determine whether a criminal defendant's conduct is a commonly accepted agricultural animal husbandry practice and therefore fits within one of the exceptions to the criminal animal cruelty provisions. Within this criminal context, and because Section 30-18-1(J) is part of the criminal code, we believe that the Legislature intended a district court presiding over a criminal case in which the defendant is charged with animal cruelty to have control over the process that addresses any dispute over whether a defendant's conduct is a commonly accepted agricultural animal husbandry practice. The presiding court is in the best position to (1) determine if there is a dispute and (2) define the parameters of the dispute in order to ensure that the issues are fairly referred to the Livestock Board. *See Wilson v. Denver*, 1998-NMSC-016, ¶ 36, 125 N.M. 308, 961 P.2d 153 ("In order to discern the intent of the Legislature when interpreting an ambiguous statute, we resort to well-accepted rules of statutory construction, always striving to select the rationale that most likely accomplishes the legislative purpose[,] or best fills a void not addressed by the Legislature." (internal quotation marks and citation omitted)).

**{23}** Because we have determined that the proper procedure for a criminal defendant to obtain a Section 30-18-1(J) hearing is to file an appropriate motion in the district court

8

presiding over the criminal case, the district court was correct in determining that a mandamus action that does not arise from a ruling in a criminal case is not an appropriate cause of action for a criminal defendant to compel the Livestock Board to hold a hearing. Mandamus actions, as we have discussed, are "available only to one who has a clear legal right to the performance sought[.]" *See Johnson*, 1999-NMSC-036, ¶ 12 (internal quotation marks and citation omitted). Once the district court in the criminal case orders a Section 30-18-1(J) hearing, the Livestock Board is mandated by law to hold the hearing and can be subject to a mandamus action to compel it to comply with its duty to hold the hearing. *See Schein v. N. Rio Arriba Elec. Coop., Inc.*, 1997-NMSC-011, ¶ 22, 122 N.M. 800, 932 P.2d 490 ("Where a duty to perform is not yet due, it cannot be subject to a writ. Relevant rights and duties must be established before a writ of mandamus can issue." (citations omitted)).

**{24}** Accordingly, the district court did not err in dismissing Collier's petition. The proper procedure for Collier to follow is to file a motion in the criminal court seeking a Section 30-18-1(J) hearing now that the Supreme Court has overturned the criminal court's order dismissing the charges. Such a construction fulfills the legislative purpose of Section 30-18-1(J) by allowing the Livestock Board to solve "disputes" arising out of whether the defendant's conduct is a commonly accepted agricultural animal husbandry practice while preventing another court or the Livestock Board from prematurely interfering with a criminal proceeding that involves an exception to the offense of cruelty to an animal.

**REMAINING ARGUMENTS**

**{25}** Collier additionally argues that mandamus and declaratory relief are proper because a constitutional challenge to Section 30-18-1(J) would be moot on appeal if brought in the criminal court. Citing *Montoya v. Blackhurst*, 1972-NMSC-058, 84 N.M. 91, 500 P.2d 176, Collier maintains that his due process challenge (1) would be "moot on appeal where he pleads his constitutional defense and loses in the context of a criminal trial upon the [Livestock Board]'s and the [State]'s likely further denial of a [Section 30-18-1(J)] hearing because he had his day in court, and [(2)] if [he] obtains an order for a [Section 30-18-1(J)] hearing, then there could be no appeal to test his theory of denial of due process under the statute given the absence of published procedures on obtaining [a Section 30-18-1(J)] hearing[]."

**{26}** As to his first argument, however, Collier fails to explain why an appeal of a constitutional challenge in the criminal court to Section 30-18-1 would be moot on appeal. If the criminal court denies his motion for a Section 30-18-1(J) hearing, Collier could assert that the denial is improper on appeal. We reject Collier's argument on this basis alone. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not review unclear or undeveloped arguments). As to his second argument, Collier's petition does not assert that Section 30-18-1(J) is unconstitutional nor does his alternative writ of mandamus. Although Collier's petition alleged that the Livestock Board violated his due process rights in denying Collier a hearing, the petition does not contend that Section 30-18-1 itself is unconstitutional. The constitutionality of

9

Section 30-18-1 is therefore not an issue in this case.

**{27}** Collier also asks this Court to "declare [Section] 30-18-1 unconstitutional prohibiting further prosecution of Collier and similarly situated defendants under the statute." Collier appears to challenge the constitutionality of Section 30-18-1 on due process grounds because "the [Livestock Board] has published no further procedures, guidance or formal regulations as to how to obtain a [Section 30-18-1(J)] hearing when there is a dispute as to what constitutes a commonly accepted animal husbandry practice, but instead engages in unconstitutional shifting applications of the statute." But, as we discussed, Collier did not challenge the constitutionality of Section 30-18-1(J) in the district court in his petition or alternative writ of mandamus, and, therefore, the issue is not properly before this Court. *See Mendoza v. Tamaya Enters., Inc.*, 2010 -NMCA- 074, ¶ 16, 148 N.M. 534, 238 P.3d 903 (holding that this Court will not address an argument not preserved in the district court).

**CONCLUSION**

**{28}** Under Section 30-18-1, the district court presiding over a pending criminal case must determine if a dispute exists regarding whether a defendant's conduct is a commonly accepted agricultural animal husbandry practice under Section 30-18-1(I)(4) and, if so, order the Livestock Board to hold a Section 30-18-1(J) hearing. Because Collier has not filed a motion in the criminal court to address Section 30-18-1(I)(4) and the need for the Livestock Board to hold a Section 30-18-1(J) hearing, his petition did not state a proper claim for mandamus or declaratory relief at this time. Accordingly, we affirm.

**{29}    IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**M. MONICA ZAMORA, Judge**

**Topic Index for *State ex rel. Collier v. N.M. Livestock Bd.*, No. 32,191**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Hearings
Judicial Review
Standard of Review

**AGRICULTURE**
Animals and Livestock

**CIVIL PROCEDURE**
Standing

**CONSTITUTIONAL LAW**
Mootness
Ripeness
Standing

**CRIMINAL LAW**
Cruelty to Animals

**JUDGMENT**
Declaratory Judgment

**REMEDIES**
Writ of Mandamus