**Certiorari Granted, August 22, 2016, S-1-SC-35974**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-002**

**Filing Date: June 9, 2016**

**Docket No. 34,427**

**BRUCE THOMPSON, as Guardian Ad Litem**
**for A.O., J.P., and G.G., Minor Children,**

**Plaintiff-Appellant,**

**v.**

**CITY OF ALBUQUERQUE, RAY SCHULTZ,**
**former Chief of Police of the City of Albuquerque,**
**and K. SANCHEZ, City of Albuquerque Police Officer,**

**Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Kennedy Kennedy & Ives, LLC
Shannon L. Kennedy
Joseph P. Kennedy
Michael L. Timm, Jr.
Albuquerque, NM

for Appellant

City of Albuquerque
Jessica M. Hernandez, City Attorney
Stephanie M. Griffin, Deputy City Attorney
Albuquerque, NM

for Appellees

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**    Plaintiff appeals the dismissal of loss of consortium claims filed under Section 41-4-12 of the New Mexico Tort Claims Act on behalf of three minors. Because we conclude that the district court erred in ruling that the Tort Claims Act did not waive immunity for such claims, we reverse.

**BACKGROUND**

**{2}**    In March 2010 Albuquerque Police Department officers responded to a report of a stolen vehicle in a Walmart parking lot. Several officers parked unmarked police cars in the lot around the stolen car. Decedent Mickey Owings (Owings), the father of A.O., J.P., and G.G. (Children), drove into the lot and parked next to the stolen vehicle, and a passenger got out of Owings' car and approached the stolen car. Officers moved one of the unmarked cars behind Owings' car to block it in, while another officer, Officer Sanchez, approached Owings' car on foot. Owings then backed his car into the unmarked police car. As Owings was backing into the police car, Officer Sanchez shot toward Owings' car, hitting Owings in the chest. Although Owings drove away, he lost consciousness and came to a stop on a nearby road. He ultimately died from the gunshot wounds sustained in the parking lot. Owings was unarmed.

**{3}**    On May 7, 2014, just over four years after the shooting, Bruce Thompson (Plaintiff) was appointed guardian ad litem for Children. A month later, Plaintiff filed a complaint against the City of Albuquerque, Ray Schultz (who was the police chief at the time of the shooting), and Officer Sanchez (collectively, Defendants) for "loss of consortium under the Tort Claims Act for the wrongful death of Mickey Owings." *See* NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015) (the Tort Claims Act or TCA). The complaint alleged, among other things, that "Defendant Sanchez shot Mr. Owings in violation of City policy and the law on deadly force, as [Owings] did not pose a threat of immediate death or serious physical injury to [Officer Sanchez] or others" and that "[t]he City of Albuquerque and Ray Schultz contributed to Mr. Owings' death by negligently hiring, training, retaining, failing to discipline, and failing to supervise its officers and by maintain[ing] a policy that allowed police officers to shoot at a moving vehicle." At the time of the filing of the complaint, Children were three, five, and twelve years old.

**{4}**    Defendants filed a motion to dismiss for failure to state a claim under Rule 1-012(B)(6) NMRA. As grounds for dismissal, Defendants argued that (1) Plaintiff had failed to comply with the TCA's notice provisions, *see* § 41-4-16, (2) Plaintiff's claims were barred by the statute of limitations in the TCA, *see* § 41-4-15, (3) the facts alleged in the complaint were insufficient to establish a loss of consortium claim, (4) there is no waiver of immunity under Section 41-4-12 for loss of consortium or negligent hiring or retention claims. After a hearing, the district court granted the motion to dismiss. Plaintiff appealed.

**DISCUSSION**

**{5}**    "Whether or not the district court has properly granted a motion to dismiss under

2

Rule 1-012(B)(6) is a question of law, which we review de novo." *Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 8, 134 N.M. 492, 79 P.3d 836. In our review, we accept properly pleaded facts as true. *Id.* "Dismissal of a claim under this rule is only proper if [the p]laintiffs are not legally entitled to relief under any set of provable facts." *Id.*

**{6}** The district court's dismissal order was based on the district court's conclusion that "the [TCA] . . . does not waive sovereign immunity for the loss of consortium claim[s] asserted in this case." The district court did not reach Defendants' arguments for dismissal related to notice, statute of limitations, or sufficiency of the allegations. The district court's conclusion was based on its determination that (1) loss of consortium is not one of the enumerated torts for which immunity is waived under Section 41-4-12; (2) even if a loss of consortium claim is derivative of an enumerated tort, such claim "must be brought together with the claim from which it is derived," i.e., the battery on Owings, (3) Plaintiff's claims must fail because Children themselves did not suffer one of the enumerated torts. On appeal, Plaintiff argues that each of these conclusions is incorrect. We agree with Plaintiff.

**{7}** We begin with a discussion of loss of consortium and then turn to the claim in the context of the TCA. "Loss of consortium was defined in an early case as the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another." *Brenneman v. Bd. of Regents of Univ. of N.M.*, 2004-NMCA-003, ¶ 7, 135 N.M. 68, 84 P.3d 685 (internal quotation marks and citation omitted). Later cases have recognized loss of consortium claims by children, grandparents, siblings, and  unmarried cohabitating partners. *See id.* ¶ 20 (recognizing minor children's loss of consortium claims); *Fitzjerrell*, 2003-NMCA-125, ¶¶ 9-11, 17 (discussing development of loss of consortium law in New Mexico). Uniform Jury Instruction 13-1810A NMRA defines loss of consortium as "[t]he emotional distress of _____ (*plaintiff*) due to the loss [of the society], [guidance], [companionship] and [sexual relations] resulting from the injury to _____ (*name of injured or deceased spouse or child of plaintiff*)." (alterations in original). A loss of consortium claim "derives from the underlying cause of action in the physically-injured [person]." *Archer v. Roadrunner Trucking Inc.*, 1997-NMSC-003, ¶ 11, 122 N.M. 703, 930 P.2d 1155. Generally, plaintiffs "should be allowed to recover for loss of consortium if the evidence shows that their relationships with [the d]ecedent [were] sufficiently close financially, socially, or both, and if it was foreseeable that the injury to [the d]ecedent would harm the relationships." *Fitzjerrell*, 2003-NMCA-125, ¶ 14.

**{8}** In New Mexico, "governmental entities and public employees shall only be liable within the limitations of the [TCA] and in accordance with the principles established in that act." Section 41-4-2(A). Hence, Plaintiff's claim "must fit within one of the exceptions to the immunity granted, or it may not be maintained." *Pemberton v. Cordova*, 1987-NMCA-020, ¶ 4, 105 N.M. 476, 734 P.2d 254.

**{9}** The particular section addressing waivers for law enforcement officials is Section 41-

4-12, which states,

> The immunity granted pursuant to Subsection A of Section 41-4-4 . . . does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

**{10}** Liability under this section "requires . . . that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *Wachocki v. Bernalillo Cty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 23, 147 N.M. 720, 228 P.3d 504 (internal quotation marks and citation omitted), *aff'd*, 2011-NMSC-039, ¶ 1, 150 N.M. 650, 265 P.3d 701. "[I]mmunity [is also waived] for negligent training and supervision by a law enforcement officer that causes the commission by a subordinate law enforcement officer of a tort listed in Section 41-4-12." *McDermitt v. Corr. Corp. of Am.*, 1991-NMCA-034, ¶ 7, 112 N.M. 247, 814 P.2d 115.

**{11}** The district court apparently agreed with Defendants' position that, because loss of consortium is not listed in Section 41-4-12 as a tort, Plaintiff's claim cannot stand. We disagree. In *Wachocki,* this Court considered a wrongful death claim under Section 41-4-12 against the Bernalillo County Sheriff's Department for negligence in enforcement of the law, which led to the decedent's death. *Wachocki*, 2010-NMCA-021, ¶ 24 ("Claims for injuries proximately caused by an officer's negligent breach of one or more of the[] duties [established by statute] are within the purview of Section 41-4-12."). Included in the Court's analysis was assessment of whether the decedent's brother's loss of consortium claim was correctly denied by the district court. *Wachocki*, 2010-NMCA-021, ¶ 50. Although the bulk of the analysis focused on whether the brother met his burden to demonstrate the elements of a loss of consortium claim, *id.* ¶ 54, the Court stated "that damages for loss of consortium may be recovered under the Section 41–4–2(A) waiver of sovereign immunity." *Wachocki*, 2010-NMCA-021, ¶ 50; *see Williams v. Bd. of Regents of the Univ. of N.M.*, No. Civ. 13-0479 JB/WPL, 2014 WL 4351533, ___ F. Supp. 3d ___, at * n.8 (Aug. 18, 2014) (stating that "[l]oss of consortium can be asserted against New Mexico government actors, despite that it is not specifically mentioned in the [TCA], provided that the underlying tort—the one that caused direct physical injury—itself triggers an immunity waiver under the [TCA]."). For support of this statement, the court cited *Brenneman*. The *Brenneman* Court held that loss of consortium claims fall within the waiver of immunity in the TCA because the TCA waived immunity "with respect to specific people and places which, in the performance of certain governmental functions, give rise to traditional duties to the public." 2004-NMCA-003, ¶ 19. It went on to state that loss of consortium damages fall within the traditional tort concepts on which the TCA is based.

4

Once a duty is established, loss of consortium damages flow from the principles of tort liability. As loss of consortium is a damage resulting from bodily injury and our courts have repeatedly held that loss of consortium plaintiffs are foreseeable, we believe that loss of consortium is exactly the type of damage "based upon the traditional tort concepts of duty" that the Legislature intended to include under the applicable waivers of sovereign immunity in the [TCA].

*Id.* (quoting § 41-4-2(B)).

**{12}** Defendants argue that neither *Wachocki* nor *Brenneman* applies here. First, Defendants argue that *Wachocki* is distinguishable because it did not address whether a loss of consortium claim must be brought together with a wrongful death action and because the facts differed from those here. We fail to see how these differences render inapplicable *Wachocki*'s general statement that loss of consortium claims may be brought under the TCA.

**{13}** Defendants also argue that, because the discussion of the loss of consortium claim in *Wachocki* did not reference a particular section of the TCA, it is unclear whether its holding applied to Section 41-4-12 or Section 41-4-5, which addresses the negligent operation of a motor vehicle. It is true that, in that case, the decedent's death was caused by a vehicle driven by a law enforcement officer. *Wachocki*, 2010-NMCA-021, ¶ 3. However, the *Wachocki* Court began its analysis with the statement, "We review de novo whether this wrongful death claim falls within the waiver of immunity under Section 41-4-12[,]" *id.* ¶ 18, and referenced Section 41-4-12 ten times in the opinion. *Wachocki*, 2010-NMCA-021, ¶¶ 1, 18-19, 23-24, 28-29. In contrast, it never mentioned Section 41-4-5 once. We therefore disagree with Defendants that "it is unknown as to whether [this Court] was referring to Section 41-4-12 or Section 41-4-5."

**{14}** To the extent that Defendants argue that *Wachocki*'s reliance on *Brenneman* was misplaced and that therefore *Wachocki*'s holding is suspect, we disagree. Defendants' argument stems from statements in *Brenneman* that Section 41-4-12 "is quite distinct from the rest of the Act" and that "[t]he plain language of [Sections 41-4-9 and -10] reveals that limitations on recoverable damages under Section 41-4-12 are inapplicable to cases under Sections 41-4-9 and -10." *Brenneman*, 2004-NMCA-003, ¶ 14. We do not interpret these statements, as Defendants do, to indicate that loss of consortium claims or damages are unavailable under Section 41-4-12. We can find no case relying on *Brenneman* to limit the types of damages available under Section 41-4-12. Moreover, in the context of the entire opinion, these statements were intended to distinguish an earlier case, which, for several reasons, was not good law on loss of consortium. *Brenneman*, 2004-NMCA-003, ¶¶ 14-16 (stating that the earlier case, *Lucero v. Salazar*, 1994-NMCA-066, 117 N.M. 803, 877 P.2d 1106, did not address loss of consortium, did not decide whether loss of consortium claims were barred by the TCA, and was decided before expansion of the loss of consortium body of law in New Mexico). Since the Court did not undertake a full examination of Section 41-4-12 and these statements were not based on statutory construction of that section, we

5

decline to consider these statements as anything more than dicta. *See Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323 ("The general rule is that cases are not authority for propositions not considered."). Hence, they do not undermine the subsequent direct holding in *Wachocki* on which we rely here.

**{15}** We next address the district court's conclusion that even if a loss of consortium claim is derivative of an enumerated tort, such claim "must be brought together with the claim from which it is derived[.]" This contention was rejected in *State Farm Mutual Automobile Insurance Co. v. Luebbers*, in which this Court considered whether a minor child could bring a loss of consortium claim separate from a wrongful death claim. 2005-NMCA-112, ¶ 37, 138 N.M. 289, 119 P.3d 169. Stating that New Mexico case law had established that "loss of consortium claims have a place in our tort jurisprudence[,]" the Court held "that upon the death of a parent, a minor child may pursue a separate claim for loss of parental consortium outside of a wrongful death action." *Id.*

**{16}** Defendants argue that *Luebbers* is inapplicable because it did not address claims under the TCA. However, since we have concluded that loss of consortium claims can be brought under the TCA, we see no reason that the *Luebbers* holding would not extend to the TCA as well. *Luebbers*' holding is now part and parcel of the "traditional tort concepts of duty" that the legislature intended to include under the TCA. Section 41-4-2(B).

**{17}** Finally, in the dismissal order, the district court stated that "Plaintiff argues the loss of consortium claim arises from the battery perpetrated on Owings and that battery is an enumerated tort. While it is true that battery is an enumerated tort, [C]hildren did not suffer a battery." To the extent this statement can be interpreted to indicate that the district court dismissed Plaintiff's loss of consortium claims because Children themselves did not suffer a battery, it erred. A loss of consortium claim is derivative of another claim. *Archer*, 1997-NMSC-003, ¶ 11. A "derivative action" is "[a] lawsuit arising from *an injury to another person*, such as a husband's action for loss of consortium arising from an injury to his wife caused by a third person." *Black's Law Dictionary* 538 (10th ed. 2014) (emphasis added). As such, the party claiming a loss of consortium is never the same person who suffered the tort that caused the loss of consortium.[1]

**CONCLUSION**

**{18}** The district court erred in dismissing Children's complaint on the ground that their loss of consortium claims did not fall within the TCA. We reverse and remand for further proceedings.

---

[1]There are references in the briefs to potential statute of limitations issues. However, the district court's ruling did not rest on the statute of limitations. We therefore are not addressing the statute of limitations issues.

6

**{19}  IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**