******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GREGORIA CAMPOS, ADMINISTRATRIX (ESTATE
OF JOSE MAURICIO CAMPOS), ET AL. *v.*
ROBERT E. COLEMAN ET AL.
(SC 19195)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

Argued October 21, 2014—officially released October 6, 2015

*John W. Mills*, for the appellants (plaintiff Mauricio Campos et al.).

*Kenneth H. Naide*, with whom, on the brief, was *John A. Kiernan*, pro hac vice, for the appellees (defendants).

*Opinion*

PALMER, J. In *Mendillo* v. *Board of Education*, 246 Conn. 456, 461, 495–96, 717 A.2d 1177 (1998), this court declined to recognize a derivative cause of action for loss of parental consortium by a minor child.[1] The primary issue presented by this case is whether we should overrule this holding in *Mendillo*. We conclude that we should.

The named plaintiff, Gregoria Campos, in her individual capacity and in her capacity as administratrix of the estate of her late husband, Jose Mauricio Campos (decedent), and the Campos' three children, Mauricio Campos, Jose Ernesto Campos and Jose Eduardo Campos (Campos children), brought this action against the defendants, Robert E. Coleman and LQ Management, LLC (LQ Management).[2] The plaintiffs alleged in their complaint that Coleman negligently had caused the decedent's death and included claims for the Campos children's loss of parental consortium.[3] The defendants filed a motion to strike the loss of parental consortium claims in accordance with *Mendillo*, which the trial court granted. Thereafter, a jury returned a verdict for the decedent's estate on the wrongful death claim and for Gregoria Campos on her loss of spousal consortium claim, and the trial court rendered judgment in accordance with the verdict. The Campos children then filed this appeal, contending that we should overrule *Mendillo* and allow them to pursue their claims for loss of parental consortium. We agree with the Campos children that we should recognize a cause of action by a minor child for loss of parental consortium resulting from an injury to a parent, subject to certain limitations.

The facts underlying this case are tragic but straightforward. On September 15, 2008, the decedent was riding a bicycle on Westfield Street in the town of West Haven when he was struck by a motor vehicle that was owned by LQ Management and operated by Coleman. The decedent suffered severe injuries, resulting in his death three days later, on September 18, 2008.

Thereafter, Gregoria Campos and the Campos children filed an eight count complaint alleging, inter alia, that (1) Coleman had negligently caused the decedent's death, thereby entitling the decedent's estate to damages under the wrongful death statute, General Statutes § 52-555, (2) LQ Management also was liable for Coleman's negligence because it owned the motor vehicle that Coleman was driving and Coleman had been driving it with LQ Management's permission, (3) Gregoria Campos was entitled to damages for loss of spousal consortium, and (4) the Campos children were entitled to damages for loss of parental consortium. The defendants filed a motion to strike the claims for loss of parental consortium, as well as other claims not relevant to this appeal, and the trial court granted the

motion as to the loss of parental consortium claims. The complaint was amended in accordance with that ruling.

The jury ultimately returned a verdict for the decedent's estate on the wrongful death claim and awarded damages in the amount of $2,948,000. In addition, the jury found that Gregoria Campos was entitled to damages for loss of spousal consortium in the amount of $1 million. The jury also found that the decedent had been 42 percent contributorily negligent and, accordingly, reduced the damages for the wrongful death claim to $1,709,840 and the damages for the loss of spousal consortium claim to $580,000. The trial court rendered judgment in accordance with the jury verdict and rendered judgment thereon.

This appeal by the Campos children followed.[4] They claim that, although the trial court correctly determined that, in light of this court's decision in *Mendillo*, the defendants were entitled to judgment as a matter of law on their claims for loss of parental consortium, *Mendillo* was incorrectly decided, and we therefore should overrule it.[5] We are persuaded by this claim.

In *Mendillo*, a majority of this court ultimately declined to recognize a minor child's claim for loss of parental consortium resulting from a tortfeasor's conduct. *Mendillo* v. *Board of Education*, supra, 246 Conn. 461, 495–96. At the outset of our analysis of this issue in *Mendillo*, however, we candidly acknowledged that "many of [the arguments in support of recognizing such a claim] have considerable appeal . . . ." Id., 480. In particular, we recognized that a minor child who, by virtue of a tortfeasor's conduct, has been deprived of the love and companionship of a parent "has suffered a genuine injury, and a serious one." (Internal quotation marks omitted.) Id., 478. Underscoring this point, we explained that "we [had] recently reaffirmed that it is our state's public policy to promote the welfare of the family, and that the interest of children in not being dislocated from the emotional attachments that derive from the intimacy of daily association . . . with the parent has constitutional significance." (Internal quotation marks omitted.) Id., quoting *Pamela B.* v. *Ment*, 244 Conn. 296, 310, 709 A.2d 1089 (1998).

We also acknowledged the argument made by the plaintiffs in *Mendillo* that "permitting compensation for loss of parental consortium will enable the emotionally injured child to secure the therapy that will, in turn, help to heal the wounds caused by his or her loss. . . . [N]ot only will the minor child benefit, but society will also benefit if the child is able to function without emotional handicap. This may well offset any increase in insurance premiums." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, supra, 246 Conn. 479.

As we further observed in *Mendillo*, another argu-

ment favoring the recognition of a derivative cause of action for parental consortium is the fact that this court already had recognized analogous causes of action for loss of spousal consortium; *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 493, 408 A.2d 260 (1979); and bystander emotional distress. *Clohessy* v. *Bachelor*, 237 Conn. 31, 49, 675 A.2d 852 (1996). With respect to the former, we acknowledged the view, as expressed by the Supreme Court of Washington, that "permitting a husband or wife but not children to recover for loss of consortium erroneously suggests that an adult is more likely to suffer emotional injury than a child"; (internal quotation marks omitted) *Mendillo* v. *Board of Education*, supra, 246 Conn. 480, quoting *Ueland* v. *Pengo Hydra-Pull Corp.*, 103 Wn. 2d 131, 134, 691 P.2d 190 (1984); and noted the contention of the plaintiffs in *Mendillo* that, following our recognition of a derivative cause of action for spousal consortium in *Hopson*, the "logical [next step] from . . . *Hopson*['s] protect[ion of] the emotional or sentimental aspects of the husband-wife relationship [is the] protection of the similar aspects of the parent-child relationship." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, supra, 479. With respect to our decision in *Clohessy*, "in which we recognized, for the first time and subject to certain limitations, that a parent and a sibling can recover damages for the emotional anguish they had [suffered] by witnessing the parent's other young child being fatally injured by the defendant's negligence"; id.; we noted the argument of the plaintiffs in *Mendillo* that the "[a]pplication of this court's logic in *Clohessy* to the question of whether a tortfeasor's liability should exend to . . . loss of [parental] consortium properly instructs that the time is similarly ripe to recognize such cause of action in this state." (Internal quotation marks omitted.) Id.

Finally, we observed what the plaintiffs in *Mendillo* had "characterize[d] as the emerging national trend recognizing . . . [a] cause of action [for loss of parental consortium] . . . ." (Internal quotation marks omitted.) Id., 479–80. We further observed that, in support of this argument, the plaintiffs in *Mendillo* had "cite[d] to a number of jurisdictions that have, since 1980, recognized a cause of action for loss of parental consortium." Id., 480.

Notwithstanding the conceded force of these arguments, we ultimately declined to recognize a cause of action for parental consortium, "primarily on the basis of: [1] the fact that recognition of the cause of action would require arbitrary limitations; [2] the additional economic burden that recognition would impose on the general public; [3] the uncertainty that recognition would yield significant social benefits; [4] the substantial risk of double recovery; and [5] the weight of judicial authority." Id., 485. Justice Berdon issued a concurring and dissenting opinion, joined by Justice Katz, in which

he disputed these points in maintaining that the court should adopt this cause of action because its benefits outweighed its costs. See id., 514 (*Berdon, J.*, concurring in part and dissenting in part).

Upon reconsideration of the relevant considerations, including the five factors that this court found determinative in *Mendillo*, we now agree with the concurring and dissenting opinion in *Mendillo* that the public policy factors favoring recognition of a cause of action for loss of parental consortium outweigh those factors disfavoring recognition. More specifically, we agree that the unique emotional attachment between parents and children, the importance of ensuring the continuity of the critically important services that parents provide to their children, society's interest in the continued development of children as contributing members of society, and the public policies in favor of compensating innocent parties and deterring wrongdoing provide compelling reasons to recognize such a cause of action. With respect to the countervailing policy considerations on which we relied in *Mendillo*, we now are persuaded for the following reasons that our concerns were overstated.

We first address our determination in *Mendillo* that recognizing such a cause of action would require the court "to impose arbitrary limitations on the scope of the cause of action in order to avoid the creation of a practically unlimited class of potential plaintiffs." Id., 485. In *Mendillo*, we reasoned that "there are other formally recognized relationships . . . [such as] siblings, grandparent and grandchild, and aunt or uncle and nephew or niece . . . that could well, depending on the case, present equally strong claims of loss of consortium. Similarly, there is nothing in the underlying rationale for recognition of the claim to confine it to *minor* children. . . . There undoubtedly are adult children who suffer a genuine loss of consortium by virtue of their parent's injury." (Citation omitted; emphasis in original; footnote omitted.) Id., 485–86.

Although we acknowledge that strong emotional attachments frequently arise in all of these relationships, we do not agree that the relationships "present equally strong claims of loss of consortium" as those arising from the relationship between a minor child and a parent. Id., 485. Almost by definition, the familial relationships referred to in *Mendillo* are more attenuated and derivative than the parent-child relationship because the relationship between siblings, between a grandparent and a grandchild, and between an uncle or an aunt and a niece or a nephew arises *through* the parent-child relationship. Indeed, "[t]he parent-child relationship is . . . the wellspring from which other family relationships derive . . . ."[6] (Internal quotation marks omitted.) Id., 500 (*Berdon, J.*, concurring in part and dissenting in part), quoting *Villareal* v. *Dept. of*

*Transportation*, 160 Ariz. 474, 478, 774 P.2d 213 (1989); see also *Mendillo* v. *Board of Education*, supra, 500 (*Berdon, J.*, concurring in part and dissenting in part) ("the parent-child relationship . . . is the earliest and most hallowed of the ties that bind humanity" [internal quotation marks omitted]), quoting *Nulle* v. *Gillette-Campbell County Joint Powers Fire Board*, 797 P.2d 1171, 1173 (Wyo. 1990). Moreover, the relationship between a parent and a minor child is the only one of these relationships that gives rise to legally enforceable rights. See, e.g., *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 15, 438 A.2d 801 (1981) (" '[t]he commonly understood general obligations of parenthood entail these minimum attributes: [1] express love and affection for the child; [2] express personal concern over the health, education and general well-being of the child; [3] the duty to supply the necessary food, clothing, and medical care; [4] the duty to provide an adequate domicile; and [5] the duty to furnish social and religious guidance,' " and failure to meet these obligations may result in termination of parental rights).

We also disagree with the court's conclusion in *Mendillo* that the distinction between minor children and adult children is arbitrary. Although we recognize that many adults continue to receive affection and guidance from their parents well past the age of majority, adults do not have the same legal entitlements with respect to their parents as minor children; see id.; and are presumptively fully autonomous and responsible for their own well-being. See, e.g., *Hibpshman* v. *Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 997 (Alaska 1987) (loss of parental consortium claims are limited to minor children); *Theama* v. *Kenosha*, 117 Wis. 2d 508, 527, 344 N.W.2d 513 (1984) ("[w]e . . . limit recovery under [a] cause of action [for loss of parental consortium] to [minor children] . . . because the minor is [the] one whose relationship is most likely to be severely affected by a negligent injury to the parent"); *Nulle* v. *Gillette-Campbell County Joint Powers Fire Board*, supra, 797 P.2d 1176 (loss of parental consortium claims are limited to minor children).

We further disagree with the suggestion of the court in *Mendillo* that adopting a cause of action for loss of parental consortium would require the court to arbitrarily exclude such claims by, for example, stepchildren. See *Mendillo* v. *Board of Education*, supra, 246 Conn. 485. For purposes of the present case, we need not decide whether a stepchild who has not been legally adopted by the injured stepparent should be permitted to bring a claim for loss of consortium. We recognize, however, that, in modern society, many children have parental-type relationships with adults who are neither their biological parents nor their adoptive parents. We further recognize that children who are deprived of such relationships are likely to suffer harm no less severe than the harm suffered by biological

and adoptive children in similar circumstances. As we indicated, because the question of whether such children may bring a loss of consortium claim is not presented by this appeal, we leave it for another day. We are not persuaded, however, that this issue, however it ultimately may be resolved, warrants denying all children the right of recovery for loss of parental consortium.[7]

For the foregoing reasons, our recognition of a cause of action by minor children for the loss of parental consortium does not require the imposition of arbitrary limitations on such a cause of action. The child-parent relationship is unique in its emotional closeness, in its value to society and in its generation of enforceable legal rights and obligations. By limiting loss of familial consortium claims to cases involving the impairment of that relationship, we are merely recognizing the natural distinction between that relationship and other familial relationships. See id., 513 (*Berdon, J.*, concurring in part and dissenting in part) ("[t]he distinction between the interests of children and those of other relatives is rational and easily applied" [internal quotation marks omitted]).

We next address our determination in *Mendillo* that recognizing a cause of action for loss of parental consortium by minor children would impose undue societal costs and would not yield significant social benefits. Id., 487. We observed in *Mendillo* that, unlike loss of spousal consortium claims, loss of parental consortium claims may be raised by *multiple* children, and the resulting costs will be borne by society as a whole through increased insurance premiums. Id., 487–88. We further stated that "the proposed offsetting value asserted by the minor plaintiffs—namely, that recovery will give the injured minor child the wherewithal to heal [his or] her wounds, thereby helping both [the child] and society at large—is too conjectural . . . ." Id., 488.

We did not explain in *Mendillo*, however, why damages from loss of parental consortium claims are any more conjectural than other types of noneconomic damages, such as damages for pain and suffering and loss of spousal consortium. See *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494 (rejecting argument that damages for loss of spousal consortium are too remote or indirect to be recognized because "[t]he task of computing damages for . . . loss of consortium is no more difficult for a judge or jury than arriving at an award for pain and suffering"). Rather, it appears that this determination in *Mendillo* was based on the premise that a minor child's loss of parental consortium is not essentially different, or more worthy of compensation, from the loss suffered by other family members, or the losses suffered by plaintiffs in other cases involving third-party liability, which involve "the far reaches of foreseeability." *Men-*

*dillo* v. *Board of Education*, supra, 246 Conn. 493; see id. (discussing cases in which this court previously has rejected claims of third-party liability and concluding that, "if the presence of a genuine injury were legally sufficient to impose [third-party] liability, the only limitations on such liability would be the far reaches of foreseeability"). On the contrary, the parent-child relationship *is* essentially different from other familial relationships, and the inability of a parent who has suffered a physical or mental injury to provide the "love, care, companionship and guidance" to minor children that he or she otherwise would have provided; (internal quotation marks omitted) id., 478; is an eminently foreseeable and uniquely harmful consequence of such an injury. See id., 484 ("as a general matter, it is foreseeable that causing serious injury to a parent may have deleterious effects on the parent's minor children"); see also id., 499 (*Berdon, J.*, concurring in part and dissenting in part) ("[i]t is common knowledge that a parent who suffers serious physical or mental injury is unable to give his minor children the parental care, training, love and companionship in the same degree as he might have but for the injury" [internal quotation marks omitted]), quoting *Hoffman* v. *Dautel*, 189 Kan. 165, 168, 368 P.2d 57 (1962). "Although a monetary award may be a poor substitute for the loss of a parent's society and companionship, it is the only workable way that our legal system has found to ease the injured party's tragic loss." *Theama* v. *Kenosha*, supra, 117 Wis. 2d 523; see also id. (damages for loss of parental consortium may be used to procure domestic services and psychiatric help for child). We further note that, if no compensation is available, the harm caused by the loss of parental consortium may not be limited to the child and may have wider societal implications. See *Mendillo* v. *Board of Education*, supra, 511 (*Berdon, J.*, concurring in part and dissenting in part) ("development of a child's character, disposition, and abilities [has] a corresponding impact on society" [internal quotation marks omitted]). We acknowledge that recognizing this cause of action will impose societal costs, as does the recognition of virtually any cause of action, but we now believe that the benefits of recognizing a cause of action for loss of parental consortium are not conjectural and outweigh the costs.

With respect to the court's concern in *Mendillo* that a cause of action for loss of parental consortium "would entail adding as many companion claims as the injured parent had minor children, each such claim entitled to separate appraisal and award"; (internal quotation marks omitted) id., 487; this concern would be adequately addressed by allowing the tortfeasor to argue that loss of parental consortium damages ordinarily will be smaller per child the greater number of siblings a child has. This is because, in large families, older children frequently take on parental responsibilities for

their younger siblings, and parents ordinarily have less time per child to provide training and companionship.[8] Cf. *Reagan* v. *Vaughn*, 804 S.W.2d 463, 467 (Tex. 1990) (in determining amount of damages, fact finder may consider whether other "consortium giving relationships are available to the child"), modified on other grounds, Texas Supreme Court, Docket No. C-9548 (Tex. March 6, 1991). Although the total award for loss of parental consortium damages may be larger when an injured parent has numerous children, this merely reflects the fact that, overall, the scope of the injury is greater.

Finally, we address our conclusion in *Mendillo* that recognizing a cause of action for loss of parental consortium "would create a significant risk of double recovery." *Mendillo* v. *Board of Education*, supra, 246 Conn. 489. In support of this conclusion, we explained that the injured parent "would be entitled, as part of [his or] her own damages for loss of life's ordinary activities, to recover for [the] inability to care for [his or] her minor children." Id. Although a parent might be able to recover for damages for the loss of the ability to provide services to his or her children in a case in which a loss of parental consortium claim has not been raised, this court held in *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 485, that loss of spousal consortium encompasses "both loss of services [to the other spouse, the value of which the injured spouse could recover in his or her own name] and loss of conjugal affection . . . ." Id.; see also id. (services provided by spouse and loss of conjugal affection both constitute spousal consortium, and "courts commit error when they attempt to distinguish between the different elements of [this] conceptualistic unity" [internal quotation marks omitted]). Similarly, parental consortium consists of both a parent's services to his or her children, such as cooking, driving or housekeeping, as well as such intangibles as the parent's "love, care, companionship and guidance . . . ." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, supra, 478. To prevent double recovery under this approach, it would be sufficient to require the parent's claim and the child's claim to be joined in the same proceeding and to require the trial court to instruct the jury that damages for loss of the injured parent's services are recoverable *only* by the minor child pursuant to the child's loss of parental consortium claim.

Next, we consider the court's assessment of the weight of authority on the question of whether to recognize a cause of action for loss of parental consortium. This court stated in *Mendillo* that "the overwhelming weight of authority in the nation is against recognition of a cause of action for loss of parental consortium." Id., 490. Our research reveals, however, that, of the forty-nine other states and the District of Columbia, the vast majority of states have recognized the cause of

action, either for cases arising from a parent's injury, or for cases arising from a parent's death, or both. Twenty jurisdictions have recognized, in some form, a cause of action for loss of parental consortium arising from a parent's injury,[9] twenty-six jurisdictions have declined to recognize such a cause of action,[10] and four jurisdictions are either unclear on the issue or have not addressed it.[11] Of the courts that have declined to recognize claims for loss of parental consortium arising from a parent's injury, seven have done so in divided opinions.[12] More significantly, thirty-four jurisdictions have recognized, either judicially or, more commonly, legislatively, a cause of action for loss of parental consortium arising from the wrongful death of a parent.[13] Only *five* jurisdictions, including this state, have declined to recognize loss of parental consortium claims arising from either an injury to or the death of a parent.[14] Thus, courts in other jurisdictions are divided on the question of whether to recognize a cause of action for loss of parental consortium arising from an injury to the parent, with only a small majority—twenty-six out of fifty—declining to do so, whereas a large majority of states have adopted such a cause of action arising out of the death of a parent, thereby recognizing that "children have a legal entitlement to their parent's society." *Williams* v. *Hook*, 804 P.2d 1131, 1137 (Okla. 1990) ("[i]n enacting [a wrongful death statute providing for damages for loss of parental consortium], the [l]egislature has acknowledged that children have a legal entitlement to their parent's society" [footnote omitted]). Accordingly, we no longer can conclude that the weight of authority supports our holding in *Mendillo*, much less that it does so overwhelmingly.[15]

Because we no longer agree with this court's weighing of the relevant public policy factors in *Mendillo*, we now overrule our holding in that case and conclude that we should recognize a cause of action for loss of parental consortium. To decide otherwise would be inconsistent with the "the fundamental policy purposes of the tort compensation system—compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . ."[16] *Mendillo* v. *Board of Education*, supra, 246 Conn. 482. Consistent with the foregoing analysis, however, we impose the following restrictions on loss of parental consortium claims. First, loss of parental consortium claims must be joined with the parent's negligence claim whenever possible, and the jury must be instructed that only the child raising the claim can recover the pecuniary value of the parent's services.[17] Cf. *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494 (loss of spousal consortium claim should be joined in one action with injured spouse's claim and tried before single trier of fact to minimize possibility of inconsistent verdicts). Second, and relatedly, because a loss of parental consortium

action "is derivative of the injured [parent's] cause of action, the consortium claim would be barred when the [action] brought by the injured [parent] has been terminated by settlement or by an adverse judgment on the merits." Id. Third, a loss of parental consortium claim may be raised only by a person who was a minor on the date that the parent was injured, and damages may be awarded only for the period between the date of the parent's injury and the date that the child reaches the age of majority.[18]

The defendants also contend that, if we recognize a cause of action for loss of parental consortium, we should limit liability to damages arising from injury to the parent during the parent's life and thereby preclude damages arising from the parent's death. For the reasons set forth in our decision in *Ladd* v. *Douglas*, 203 Conn. 187, 523 A.2d 1301 (1987), we agree with the restriction advocated by the defendants. In *Ladd*, we considered whether the plaintiff, Catherine Ladd, whose husband had been killed in a motor vehicle accident, was entitled to damages for the loss of spousal consortium during the ten days that her husband lived following the accident and for the period after his death, pursuant to § 52-555. Id., 189. The defendants, the driver, the lessee and the lessor of the vehicle that struck the decedent, conceded that the plaintiff could recover for loss of consortium for the period between the accident and her husband's death. Id. The defendants contended, however, that Ladd was not entitled to damages for loss of spousal consortium resulting from her husband's death because, under the common law, there is no "right of recovery for the wrongful death of a victim on the part of either his estate or members of his family." Id., 191. We agreed, observing that "our wrongful death statute has been regarded as the exclusive means by which damages resulting from death are recoverable." Id., 195. We further observed that, under the wrongful death statute, a decedent's estate may "recover the value to the decedent of his nonpecuniary as well as pecuniary services to others"; id., 197; but the decedent's family members are not authorized to recover damages in their own right. See id. Accordingly, we concluded that a spouse may not recover damages for postmortem loss of spousal consortium under Connecticut statutory or common law. Id. Our reasoning in *Ladd* applies equally to loss of parental consortium claims.[19] We therefore conclude that loss of parental consortium claims are limited to claims resulting from a parent's injury during the parent's life.

In addition to adopting the foregoing limitations on liability, the fact finder necessarily must consider whether the parent's injuries were insignificant or serious, and whether they were temporary or permanent. We decline, however, to impose the limitation adopted by a number of courts that damages are recoverable

only when the parent has suffered a "serious, permanent and disabling mental or physical injury" that is "so overwhelming and severe that it causes the parent-child relationship to be destroyed or [to be] nearly destroyed." *Keele* v. *St. Vincent Hospital & Health Care Center*, 258 Mont. 158, 162, 852 P.2d 574 (1993); accord *Villareal* v. *Dept. of Transportation*, supra, 160 Ariz. 480. Rather, "the severity of the injury to the parent and its actual effect [on] the parent-child relationship . . . the nature of the child's relationship with the parent, the child's emotional and physical characteristics, and whether other consortium giving relationships are available to the child"; *Reagan* v. *Vaughn*, supra, 804 S.W.2d 467; are factors to be considered by the fact finder on a case-by-case basis in determining the amount of damages.[20]

Finally, we address the defendants' contention that, if we recognize a cause of action for loss of parental consortium, we should not make it available to the parties in the present case but should apply it prospectively only. In support of their claim, the defendants rely on *Ostrowski* v. *Avery*, 243 Conn. 355, 703 A.2d 117 (1997), in which this court applied "the three-part test set out in *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), for determining whether a decision must be applied prospectively only. A common-law decision will be applied nonretroactively only if: (1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Citation omitted; internal quotation marks omitted.) *Ostrowski* v. *Avery*, supra, 378 n.18. The defendants contend that, because we have created a new rule that would impose a substantial burden on them, they have met this test. The defendants also refer to this court's holding in *Hopson* that the newly adopted cause of action for loss of spousal consortium would not be available when "a spouse's claims for . . . injuries has been concluded by judgment or settlement or the running of [the] limitations [period] prior to" the issuance of that decision. *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496. The defendants acknowledge that the new cause of action was available to the plaintiffs in *Hopson*, but they contend that this was because the appeal in that case was interlocutory. Because the present case has gone to judgment on the merits, they contend that our holding cannot apply retroactively under *Hopson*.

We are not persuaded by the defendants' argument. The general rule is that judicial decisions apply retroactively to pending cases; e.g., *Avoletta* v. *State*, 152 Conn.

App. 177, 186 n.2, 98 A.3d 839, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); and this court's decision in *Ostrowski* sets forth the conditions under which the courts will recognize an *exception* to that general rule. See *Ostrowski* v. *Avery*, supra, 243 Conn. 378 n.18; see also *Marone* v. *Waterbury*, 244 Conn. 1, 10, 707 A.2d 725 (1998) ("judgments that are not by their terms limited to prospective application are presumed to apply retroactively"); *Clohessy* v. *Bachelor*, supra, 237 Conn. 57 ("[t]raditionally . . . in cases of civil tort liability in which new causes of action are recognized, the new theory of liability is applied to the parties in the case"). The defendants in the present case have pointed to no exceptional circumstances that would render the retroactive application of our decision in the present case inequitable or unduly harsh, and they cannot seriously contend that they relied to their detriment on the rule enunciated in *Mendillo*.[21] See *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 495–96 ("[o]ur decision . . . [adopting a cause of action for loss of spousal consortium] does not drastically or radically change existing law, for in no serious way will an existing interest be impaired or an expectation be disappointed or a reliance be defeated"); see also *Mueller* v. *Tepler*, 312 Conn. 631, 655, 95 A.3d 1011 (2014) (newly adopted cause of action for loss of consortium by person who would have married victim of tortious conduct if she had not been prevented by law that violated public policy was available to parties to appeal when defendants could not have relied on previous rule to their detriment); *Clohessy* v. *Bachelor*, supra, 57 n.15 (newly adopted cause of action for bystander emotional distress was available to parties to appeal because existence of rule could have "had no influence on the defendant's alleged negligent conduct"); *Hopson* v. *St. Mary's Hospital*, supra, 496 n.5 (courts are more willing to abandon old rule and to apply new rule to parties in case "when the rule to be discarded may not be reasonably supposed to have determined the conduct of the litigants").

Moreover, contrary to the defendants' contention, the appeal in *Hopson* was not interlocutory but was "[f]rom the judgment of the [trial] court rendered on the demurrers [to the plaintiff husband's loss of consortium claim, which the trial court had] sustained . . . ." (Footnote omitted.) *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 486. Thus, when we stated in *Hopson* that the holding of that case would not apply to cases that had "been concluded by judgment"; id., 496; we clearly were referring to cases in which there was no appeal pending. See, e.g., *State* v. *Thompson*, 118 Conn. App. 140, 154, 983 A.2d 20 (2009) (prior judicial decision applied to case in which judgment had been rendered and in which appeal from judgment was pending), cert. denied, 294 Conn. 932, 986 A.2d 1057 (2010); cf. *Marone* v. *Waterbury*, supra, 244 Conn. 13 (for purposes of determining whether judicial decision applies retroactively to work-

ers' compensation award, award was final and decision did not apply "when . . . the parties fail[ed] to appeal [from the award] within the statutory time period"); see also *Marone* v. *Waterbury*, supra, 11 n.10 (presumption of retroactivity of judicial decisions is limited to "pending cases" because application of judicial decision to case in which no appeal is pending and trial court would be required to open and modify judgment would violate principles of res judicata and collateral estoppel). We therefore conclude that our holding recognizing a cause of action for loss of parental consortium applies to the present case and to other pending cases. No action for loss of parental consortium will be allowed, however, when a parent's "claim for . . . injuries has been concluded by judgment or settlement or the running of [the] limitations [period] prior to the [issuance] of this opinion . . . ." *Hopson* v. *St. Mary's Hospital*, supra, 496.

The judgment is reversed with respect to the claims for loss of parental consortium and the case is remanded with direction to deny the defendants' motion to strike those claims and for further proceedings in accordance with this opinion.

In this opinion ROGERS, C. J., and EVELEIGH and McDONALD, Js., concurred.

[1] A cause of action for loss of parental consortium arises when a tortfeasor causes injuries to the parent of a minor child, and those injuries result in "the loss [to the child] of [the] parent's love, care, companionship and guidance . . . ." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, supra, 246 Conn. 478.

[2] La Quinta Inn and Suites was named as a defendant in the plaintiffs' original complaint, but the trial court ultimately granted the defendants' motion to strike the claims against that defendant, which is not a party to this appeal. We hereinafter refer to Coleman and LQ Management collectively as the defendants.

[3] The Campos children were all over the age of majority when this action was filed.

[4] The Campos children appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[5] Justice Zarella contends in his dissenting opinion that "[i]t is not the duty of this court to make law. That is a task properly left to the legislature." It is black letter law, however, that "[t]he issue of whether to recognize a common-law cause of action . . . is a matter of policy for the court to determine based on the changing attitudes and needs of society." (Internal quotation marks omitted.) *Mueller* v. *Tepler*, 312 Conn. 631, 650, 95 A.3d 1011 (2014). Moreover, the weighing of public policies in the present case is no different in kind than the weighing that this court has conducted in numerous cases. See, e.g., id., 649–58 (recognizing as matter of public policy that member of same-sex couple who would have been married but for legal bar on such marriages can bring loss of consortium claim); *Craig* v. *Driscoll*, 262 Conn. 312, 338–40, 813 A.2d 1003 (2003) (recognizing that purveyor who negligently serves liquor to adult patron who, as result of his intoxication, injures another, can be proximate cause of such injuries); *Jaworski* v. *Kiernan*, 241 Conn. 399, 412, 696 A.2d 332 (1997) ("[A]s a matter of policy, it is appropriate to adopt a standard of care imposing on the defendant, a participant in a team contact sport, a legal duty to refrain from reckless or intentional conduct. Proof of mere negligence is insufficient to create liability."); *Clohessy* v. *Bachelor*, 237 Conn. 31, 49, 675 A.2d 852 (1996) ("[w]e . . . conclude, on the basis of sound public policy and principles of reasonable foreseeability, that a plaintiff should be allowed to recover, within certain limitations, for emotional distress as a result of harm done to a third party"); *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 493, 408 A.2d 260 (1979)

(recognizing cause of action for loss of spousal consortium). Indeed, we already have engaged in the very *same* weighing process in *Mendillo* v. *Board of Education*, supra, 246 Conn. 480–90, 495–96. We merely reach a different conclusion in the present case. If the legislature disagrees with our conclusion, it may, of course, legislatively abrogate our decision or, alternatively, modify our decision as it deems appropriate.

[6] Of course, we do not suggest that the mere fact that a child's biological or adoptive parent has been injured automatically results in a compensable injury to the child. When the injured parent provided no affection, care, concern, guidance or services to the child prior to the injury, the child cannot establish that he or she was harmed by the injury, which is a required element of any tort claim.

[7] Moreover, we reiterate that the legislature is free to take whatever action it might wish to take with respect to this and all other issues concerning the recognition and scope of the cause of action for loss of parental consortium. See footnote 5 of this opinion.

[8] We do not suggest that all children necessarily receive the same amount of care and companionship from their parents. For example, some of an injured parent's children may have a parental relationship with another person who fills many of the child's needs, while others do not, or one of the children may have special needs that require more care and attention from a parent. Consequently, there may be circumstances in which some children will be entitled to a greater award of damages for loss of parental consortium than other children.

[9] See Fla. Stat. Ann. § 768.0415 (West 2011); R.I. Gen. Laws § 9-1-41 (b) (2012); *Hibpshman* v. *Prudhoe Bay Supply, Inc.*, supra, 734 P.2d 997; *Villareal* v. *Dept. of Transportation*, supra, 160 Ariz. 477; *Higley* v. *Kramer*, 581 So. 2d 273, 282–83 (La. App.), cert. denied, 583 So. 2d 483 (La. 1991); *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 516, 413 N.E.2d 690 (1980); *Berger* v. *Weber*, 411 Mich. 1, 13, 17, 303 N.W.2d 424 (1981); *Pence* v. *Fox*, 248 Mont. 521, 527, 813 P.2d 429 (1991); *Gallimore* v. *Children's Hospital Medical Center*, 67 Ohio St. 3d 244, 255, 617 N.E.2d 1052 (1993); *Williams* v. *Hook*, 804 P.2d 1131, 1138 (Okla. 1990); *Reagan* v. *Vaughn*, supra, 804 S.W.2d 467; *Hay* v. *Medical Center Hospital*, 145 Vt. 533, 545, 496 A.2d 939 (1985); *Ueland* v. *Pengo Hydra-Pull Corp.*, supra, 103 Wn. 2d 140; *Belcher* v. *Goins*, 184 W. Va. 395, 406, 400 S.E.2d 830 (1990); *Theama* v. *Kenosha*, supra, 117 Wis. 2d 527; *Nulle* v. *Gillette-Campbell County Joint Powers Fire Board*, supra, 797 P.2d 1176; see also *Audubon-Exira Ready Mix, Inc.* v. *Illinois Central Gulf Railroad Co.*, 335 N.W.2d 148, 151–52 (Iowa 1983) (damages for loss of parental consortium may be recovered by injured parent on child's behalf and are child's property); *Brenneman* v. *Board of Regents*, 135 N.M. 68, 72, 84 P.3d 685 (App.) ("[parental] loss of consortium is exactly the type of damage based [on] the traditional tort concepts of duty that the [l]egislature intended to include" as damages under New Mexico's Tort Claims Act), cert. denied, 135 N.M. 51, 84 P.3d 668 (2003). Some states have adopted an unusual or limited form of the cause of action for loss of parental consortium. See *Lefto* v. *Hoggsbreath Enterprises, Inc.*, 567 N.W.2d 746, 750 (Minn. App. 1997) (child cannot recover for loss of parental consortium but can recover pecuniary damages for "the loss of aid, advice, comfort, and protection" under Minnesota's dram shop law when person in parental role has been injured), aff'd, 581 N.W.2d 855 (Minn. 1998); *Zoss* v. *Dakota Truck Underwriters*, 590 N.W.2d 911, 914 (S.D. 1999) (child cannot recover for loss of parental consortium in wrongful death action but can recover pecuniary value of loss of "the decedent's society and companionship, which includes such things as protection, guidance, advice and assistance," because pecuniary injury "need not exist only between the time of injury and the time of death").

We note that *Mendillo* incorrectly identified Florida and Iowa as jurisdictions that do not recognize loss of parental consortium claims. *Mendillo* v. *Board of Education*, supra, 246 Conn. 490, citing *Zorzos* v. *Rosen ex rel. Rosen*, 467 So. 2d 305 (Fla. 1985), and *Audubon-Exira Ready Mix, Inc.* v. *Illinois Central Gulf Railroad Co.*, supra, 335 N.W.2d 148. Although the court in *Zorzos* had declined to adopt a cause of action for loss of parental consortium; see *Zorzos* v. *Rosen ex rel. Rosen*, supra, 307; that case was legislatively abrogated in 1988; see 1988 Fla. Laws 973, 974 (c. 88-173, § 1), codified at Fla. Stat. Ann. § 768.0415 (West 2011); and the Iowa Supreme Court had rejected a common-law cause of action for loss of parental consortium only for claims arising from the *death* of the parent. See *Audubon-Exira Ready Mix, Inc.* v. *Illinois Central Gulf Railroad Co.*, supra, 151 (child's common-law loss of parental consortium action arising from death

was not recognized because value of " 'services decedents might and would have rendered in training and educating their children' " is recoverable by parent's estate pursuant to wrongful death statute). The court in *Mendillo* also failed to recognize that loss of parental consortium claims arising from a parent's injury had been authorized by statute in Rhode Island since 1984. See 1984 R.I. Pub. Laws 140 (c. 64, § 1), codified as amended at R.I. Gen. Laws § 9-1-41 (b) (2012). Finally, one of the cases recognizing loss of parental consortium claims was decided after this court issued its decision in *Mendillo*. See *Brenneman* v. *Board of Regents*, supra, 135 N.M. 72.

[10] *Johnson* v. *United States*, United States District Court, Docket Nos. 1:14cv220-MHT, 1:14cv221-MHT, 1:14cv222-MHT (M.D. Ala. December 3, 2014); *Lewis* v. *Rowland*, 287 Ark. 474, 478–79, 701 S.W.2d 122 (1985); *Borer* v. *American Airlines, Inc.*, 19 Cal. 3d 441, 451, 453, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); *Lee* v. *Dept. of Health*, 718 P.2d 221, 233–34 (Colo. 1986); *Pleasant ex rel. Pleasant* v. *Washington Sand & Gravel Co.*, 262 F.2d 471, 473 (D.C. Cir. 1958); *W.J. Bremer Co.* v. *Graham*, 169 Ga. App. 115, 116–17, 312 S.E.2d 806 (1983), cert. denied, 252 Ga. 36, 312 S.E.2d 787 (1984); *Green* v. *A. B. Hagglund & Soner*, 634 F. Supp. 790, 796–97 (D. Idaho 1986); *Karagiannakos* v. *Gruber*, 274 Ill. App. 3d 155, 158, 653 N.E.2d 932, appeal denied, 164 Ill. 2d 565, 660 N.E.2d 1271 (1995); *Dearborn Fabricating & Engineering Corp.* v. *Wickham*, 551 N.E.2d 1135, 1139 (Ind. 1990); *Klaus* v. *Fox Valley Systems, Inc.*, 259 Kan. 522, 531, 912 P.2d 703 (1996); *Lambert* v. *Franklin Real Estate Co.*, 37 S.W.3d 770, 780 (Ky. App. 2000); *Durepo* v. *Fishman*, 533 A.2d 264, 264–66 (Me. 1987); *Gaver* v. *Harrant*, 316 Md. 17, 32–33, 557 A.2d 210 (1989); *Thompson* v. *Love*, 661 So. 2d 1131, 1135 (Miss. 1995); *Powell* v. *American Motors Corp.*, 834 S.W.2d 184, 191 (Mo. 1992); *Guenther ex rel. Guenther* v. *Stollberg*, 242 Neb. 415, 421, 495 N.W.2d 286 (1993); *General Electric Co.* v. *Bush*, 88 Nev. 360, 368, 498 P.2d 366 (1972); *Harrington* v. *Brooks Drugs, Inc.*, 148 N.H. 101, 104, 808 A.2d 532 (2002); *Russell* v. *Salem Transportation Co.*, 61 N.J. 502, 504, 506, 295 A.2d 862 (1972); *DeAngelis* v. *Lutheran Medical Center*, 84 App. Div. 2d 17, 27, 445 N.Y.S.2d 188 (1981), aff'd, 58 N.Y.2d 1053, 449 N.E.2d 406, 462 N.Y.S.2d 626 (1983); *Vaughn* v. *Clarkson*, 324 N.C. 108, 111, 376 S.E.2d 236 (1989); *Hastings* v. *James River Aerie No. 2337-Fraternal Order of Eagles*, 246 N.W.2d 747, 753 (N.D. 1976); *Norwest* v. *Presbyterian Intercommunity Hospital*, 293 Or. 543, 563, 567, 652 P.2d 318 (1982); *Steiner ex rel. Steiner* v. *Bell Telephone Co.*, 358 Pa. Super. 505, 522, 517 A.2d 1348 (1986), aff'd, 518 Pa. 57, 540 A.2d 266 (1988); *Taylor* v. *Medenica*, 324 S.C. 200, 222, 479 S.E.2d 35 (1996); *Taylor* v. *Beard*, 104 S.W.3d 507, 511 (Tenn. 2003).

[11] We have found no cases addressing the issue in the states of Delaware, Utah and Virginia. The law in Hawaii is unclear. The Supreme Court of Hawaii declined to recognize a cause of action for loss of parental consortium in *Halberg* v. *Young*, 41 Haw. 634, 646 (1957), but the United States District Court for the District of Hawaii noted in 1992 that, in light of intervening cases, the Supreme Court of Hawaii would overrule *Halberg* and recognize the cause of action. *Marquardt* v. *United Airlines, Inc.*, 781 F. Supp. 1487, 1492 (D. Haw. 1992). The Supreme Court of Hawaii has not addressed the issue since the District Court issued its decision in *Marquardt*.

[12] See *Borer* v. *American Airlines, Inc.*, 19 Cal. 3d 441, 460, 563 P.2d 838, 138 Cal. Rptr. 302 (1977) (Mosk, J., dissenting) (contending that court should recognize cause of action for loss of parental consortium); *Durepo* v. *Fishman*, 533 A.2d 264, 266 (Me. 1987) (Nichols and Glassman, Js., dissenting) (same); *Gaver* v. *Harrant*, 316 Md. 17, 33, 557 A.2d 210 (1989) (Adkins, J., dissenting) (same); *Thompson* v. *Love*, 661 So. 2d 1131, 1137 (Miss. 1995) (McRae, Sullivan and Banks, Js., dissenting) (same); *Guenther ex rel. Guenther* v. *Stollberg*, 242 Neb. 415, 421, 495 N.W.2d 286 (1993) (White, J., dissenting) (same); *Guenther ex rel. Guenther* v. *Stollberg*, supra, 426 (Shanahan, J., dissenting) (same); *Norwest* v. *Presbyterian Intercommunity Hospital*, 293 Or. 543, 574, 652 P.2d 318 (1982) (Lent, C. J., dissenting) (same); *Steiner ex rel. Steiner* v. *Bell Telephone Co.*, 358 Pa. Super. 505, 524, 517 A.2d 1348 (1986) (Brosky, J., dissenting) (same), aff'd, 518 Pa. 57, 540 A.2d 266 (1988).

Four courts that have recognized a cause of action for loss of parental consortium have done so in divided opinions. See *Reagan* v. *Vaughn*, supra, 804 S.W.2d 469 (Hecht, J., concurring and dissenting) (arguing that court should not recognize cause of action for loss of parental consortium arising from injury); *Hay* v. *Medical Center Hospital*, 145 Vt. 533, 546, 496 A.2d 939 (1985) (Larrow and Peck, Js., dissenting) (contending that child of injured parent was limited to recovering damages authorized by wrongful death statute because, under that statute, person who is permanently comatose is deemed dead); *Ueland* v. *Pengo Hydra-Pull Corp.*, supra, 103 Wn. 2d 141–43 (Dore, J., dissenting) (contending that court should not recognize

cause of action for loss of parental consortium); *Nulle* v. *Gillette-Campbell County Joint Powers Fire Board*, supra, 797 P.2d 1176–78 (Thomas, J., dissenting) (same). In another case, certain justices did not agree with the court's decision to recognize a cause of action for loss of parental consortium but contended that the injured parent could be allowed to recover for the cost of "services or companionship that the parent would normally have provided." *Berger* v. *Weber*, 411 Mich. 1, 18, 48–49, 303 N.W.2d 424 (1981) (Levin and Ryan, Js., and Coleman, C. J., dissenting).

[13] The following statutes allow for a cause of action for the loss of parental consortium arising out of the wrongful death of a parent: Colo. Rev. Stat. Ann. §§ 13-21-201 (1) and 13-21-203 (1) (a) (2014) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for loss of companionship); Haw. Rev. Stat. § 663-3 (b) (5) (Supp. 2014) (award in wrongful death action may include damages for "[l]oss of parental care, training, guidance, or education"); Kan. Stat. Ann. § 60-1904 (a) (5) (1994) (award in wrongful death action may include damages for "loss of parental care, training, guidance or education"); La. Civ. Code Ann. arts. 2315 (B), 2315.2 (A) (1) (2008) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for "loss of consortium, service, and society"); Me. Rev. Stat. Ann. tit. 18-A, § 2-804 (b) (West 2012) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for "the loss of comfort, society and companionship of the deceased"); Md. Code Ann., Cts. & Jud. Proc. § 3-904 (d) (LexisNexis 2013) (award in wrongful death action may include damages for "loss of society, companionship, comfort, protection . . . parental care . . . attention, advice, counsel, training, guidance, or education . . . for the death of . . . [3] [a] parent of a minor child"); Mass. Ann. Laws c. 229, § 2 (LexisNexis 2009) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for "care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent"); Mich. Comp. Laws Serv. § 600.2922 (3) (a) and (6) (LexisNexis Supp. 2015) (wrongful death action may be brought for benefit of decedent's children, and award may include damages for "the loss of the society and companionship of the deceased"); Mo. Ann. Stat. §§ 537.080 and 537.090 (2008) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for "the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support" that decedent would have provided); Nev. Rev. Stat. § 41.085 (2) and (4) (2013) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for loss of decedent's "companionship, society, comfort and consortium"); N.H. Rev. Stat. Ann. § 556:12 (III) (2007) (when decedent is parent of minor children, trier of fact may award damages to children for "the loss of the comfort, society, affection, guidance, and companionship of the deceased," limited to $50,000 per child); N.C. Gen. Stat. § 28A-18-2 (b) (4) (2013) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for loss of "[s]ociety, companionship, comfort, guidance, kindly offices and advice of the decedent"); Ohio Rev. Code Ann. § 2125.02 (B) (3) (West 2014) (award in wrongful death action may include damages for "[l]oss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving . . . dependent children"); Okla. Stat. Ann. tit. 12, § 1053 (B) (West 2015) (award in wrongful death action may include damages for "loss of companionship of the children . . . of the decedent"); Or. Rev. Stat. § 30.020 (2) (2013) (in wrongful death action, "damages may be awarded in an amount which . . . [d] [j]ustly, fairly and reasonably compensates the decedent's . . . children . . . for loss of the society, companionship and services of the decedent"); 42 Pa. Cons. Stat. Ann. § 8301 (a) and (b) (West 2007) (wrongful death action may be brought for benefit of decedent's children); W. Va. Code Ann. § 55-7-6 (b) and (c) (1) (LexisNexis 2008) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for loss of "society, companionship, comfort, guidance, kindly offices and advice of the decedent"); Wis. Stat. Ann. § 895.04 (4) (West Supp. 2014) (in wrongful death action, "damages not to exceed . . . $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the . . . children . . . of the deceased"); Wyo. Stat. Ann. § 1-38-102 (b) and (c) (2013) (wrongful death action may be brought for benefit of decedent's children, and recovery may include damages for "loss of probable future companionship, society and comfort").

The following cases have recognized a cause of action for the loss of parental consortium arising out of the wrongful death of a parent: *Hibpshman* v. *Prudhoe Bay Supply, Inc.*, supra, 734 P.2d 994 (under Alaska's

wrongful death statute, action may be brought for benefit of decedent's child, and recovery may include damages for loss of consortium); *Merritt-Chapman & Scott Corp.* v. *Frazier*, 289 F.2d 849, 858 (9th Cir.) (under Arizona's wrongful death statute, jury was permitted to award decedent's children damages for loss of companionship, comfort and guidance), cert. denied, 368 U.S. 835, 82 S. Ct. 60, 7 L. Ed. 2d 36 (1961); *Consolidated Freightways Corp.* v. *Futrell*, 201 Ga. App. 233, 233, 410 S.E.2d 751 (1991) (award in wrongful death action may include damages for loss of "a parent's society, advice, example and counsel" [internal quotation marks omitted]), cert. denied, Georgia Supreme Court, Docket No. S92C0070 (Ga. November 1, 1991); *Horner* v. *Sani-Top, Inc.*, 143 Idaho 230, 237, 141 P.3d 1099 (2006) ("general damages, such as loss of society and companionship, will be presumed upon death when the plaintiff is the . . . child . . . of the decedent"); *TRW Vehicle Safety Systems, Inc.* v. *Moore*, 936 N.E.2d 201, 222 (Ind. 2010) (under Indiana's wrongful death statute, "[a] decedent's minor children may recover for loss of parental training and guidance as well as for the loss of their parent's care" [internal quotation marks omitted]); *Drews* v. *Gobel Freight Lines, Inc.*, 197 Ill. App. 3d 1049, 1058, 557 N.E.2d 303 (1990) (damages that decedent's children may recover in wrongful death action include "all of those intangible benefits encompassed by the terms 'loss of society' or 'loss of consortium' "), aff'd, 144 Ill. 2d 84, 578 N.E.2d 970 (1991); *Giuliani* v. *Guiler*, 951 S.W.2d 318, 323 (Ky. 1997) (recognizing common-law action for loss of parental consortium arising from wrongful death); *State Farm Mutual Automobile Ins. Co.* v. *Luebbers*, 138 N.M. 289, 300, 119 P.3d 169 (App. 2005) (damages for loss of parental consortium may be recovered under wrongful death statute and in independent common-law action), cert. quashed, 140 N.M. 675, 146 P.3d 810 (2006); *Mease* v. *Commonwealth*, 145 Pa. Commw. 407, 412, 603 A.2d 679 (1992) (beneficiary in wrongful death action is entitled to pecuniary value of services, society and comfort that decedent would have provided); *Smith* v. *Wells*, 258 S.C. 316, 319, 188 S.E.2d 470 (1972) (decedent's children may recover for "loss of companionship, and . . . deprivation of the use and comfort of the [decedent's] society" in wrongful death action); *Taylor* v. *Beard*, 104 S.W.3d 507, 509 (Tenn. 2003) (under wrongful death statute, " 'pecuniary value' " includes damages for loss of parental consortium); *Yowell* v. *Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986) (decedent's children may recover damages for loss of companionship and society); *Murray* v. *United States*, 327 F. Supp. 835, 841 (D. Utah 1971) (under Utah's wrongful death statute, children may recover damages for "loss of society, companionship, happiness and association with their . . . [parents]"), amended on other grounds, 463 F.2d 208 (10th Cir. 1972); *Matthews* v. *Hicks*, 197 Va. 112, 119–20, 87 S.E.2d 629 (1955) (damages in wrongful death action, which may be brought for benefit of decedent's children, may include "loss of deceased's care, attention and society"); *Ueland* v. *Pengo Hydra-Pull Corp.*, supra, 103 Wn. 2d 134 ("[a] child . . . can bring an action for wrongful death . . . where loss of consortium is an element of the recovery").

[14] The other states are Arkansas, New Jersey, New York and North Dakota.

[15] Justice Zarella contends in his dissenting opinion that we should not rely on the states in which the legislature has provided a statutory cause of action for loss of parental consortium arising from nonfatal injuries or death in support of our conclusion that most states have concluded that the public policies favoring the recognition of such a cause of action outweigh those disfavoring it. Presumably, however, the legislatures in these states performed the same balancing of public policy interests that we have performed and came to the conclusion that the policies in favor of compensating children for the loss of parental consortium outweigh the policies against it. We see no reason why we should be required to ignore these legislative policy assessments.

[16] In overruling *Mendillo*, we are mindful of the important role that the doctrine of stare decisis plays in our jurisprudence and that we should overrule a prior decision only when logic dictates such a result. See, e.g., *Jaiguay* v. *Vasquez*, 287 Conn. 323, 351 n.22, 948 A.2d 955 (2008). Like *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 485, in which we overruled our earlier precedent declining to recognize a claim for loss of spousal consortium; see id., 494–96 (overruling *Marri* v. *Stamford Street Railroad Co.*, 84 Conn. 9, 78 A. 582 [1911], and recognizing cause of action for loss of spousal consortium); this is such a case.

[17] In the unusual case in which those actions cannot be joined, the injured parent may recover damages arising out of the parent's inability to care for his or her minor child only if the child has not already recovered for the loss of the parent's society and companionship. This limitation will eliminate any risk of a double recovery in the rare case in which joinder of the two claims is impossible or highly impracticable.

[18] For purposes of this opinion, a minor child is a person under the age of eighteen years who has not been legally emancipated. See General Statutes § 46b-120 (1) ("'[c]hild' means any person under eighteen years of age who has not been legally emancipated"). The record reveals that Jose Eduardo Campos was the only one of the Campos children who was a minor when the decedent was injured on September 15, 2008.

Because the issue is not before us, we express no opinion as to whether a physically or mentally disabled person who is dependent on parental care, but who is over the age of eighteen, may raise a loss of parental consortium claim.

[19] After our decision in *Ladd*, the legislature enacted General Statutes § 52-555a, which authorizes a cause of action for loss of spousal consortium arising from the death of a spouse separate and independent from a wrongful death action. See Public Acts 1989, No. 89-148, § 1, codified at General Statutes § 52-555a. The legislature, however, has not authorized a cause of action for loss of parental consortium arising from the death of a parent.

[20] The Campos children contend that they should be entitled "to seek compensation for the serious harm they sustained watching their father suffer for three days in the hospital before he succumbed to [his] injuries . . . ." Under our case law, however, such injuries are compensable in actions for bystander emotional distress, subject to the limitations on that cause of action. See *Clohessy* v. *Bachelor*, supra, 237 Conn. 52–53 (close family member of victim may recover for emotional injury caused by contemporaneous sensory perception of event that caused victim's injury or by viewing victim immediately after event if no material change has occurred with respect to victim's location and condition, but family member may not recover for such injury if he or she was not at scene where injury occurred or did not arrive shortly after injury causing event). The plaintiffs have cited no authority for the proposition that the type of emotional injury caused by witnessing a parent's suffering, as distinct from the injury caused by the loss of a parent's love, care, companionship and guidance, should be recoverable in an action for the loss of parental consortium.

[21] The defendants contended at oral argument before this court that, because the jury's award of damages for the wrongful death claim might well have been different if the Campos children had been permitted to present their loss of parental consortium claim to the jury at trial, allowing the Campos children to bring a claim at this point could result in double recovery. The defendants have cited to nothing in the record, however, that would support a conclusion that the jury's award of damages included amounts that would be recoverable in an action for loss of parental consortium. In any event, under the limitations that we have placed on loss of parental consortium claims in the present case, Jose Eduardo Campos is the only plaintiff who will be able to assert a loss of parental consortium claim; see footnote 18 of this opinion; and he will be entitled to seek damages only for the three days that the decedent survived after he was injured. Any potential overlap in damages is therefore de minimis.